805 A.2d 1061

Ash DUA, et al.,

v.

COMCAST CABLE OF MARYLAND, INC., et al.

Douglas Harvey

v.

Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.

Nos. 71, 121, Sept. Term, 2000.

Court of Appeals of Maryland.

Aug. 29, 2002.

Ronald B. Rubin (Rubin & Rubin, Chartered, on brief) Rockville, for appellants, Ash Dua, et al.

Philip Scott Friedman, Friedman Law Offices, P.L.L.C., Seth D. Goldberg, Seth D. Goldberg, P.C., Paul D. Gleiberman, Gleiberman & Associates, P.C., Washington, DC, Kieron F. Quinn, Quinn, Gordon & Wolf, LLP, Baltimore, Philip O. Foard, Foard Gisriel & O'Brien, L.L.C., Towson, John J. Beins, Gavett & Datt, P.C., Rockville, of counsel for appellants Ash Dua, et al.

Frederick M. Baron, Jeffrey Robert White, Washington, DC, brief of the Association of Trial Lawyers of America, amicus curiae, for appellants.

F. Paul Bland, Trial Lawyers for Public Justice, P.C., Washington, DC, amici curiae, for HMO Subrogation plaintiffs.

Deborah M. Thompson, Public Justice Center, Professor Michael I. Meyerson, University of Baltimore School of Law, Baltimore, for amici curiae Public Justice Center, Maryland Public Interest Research Group, AARP, and National Association of Consumer Advocates.

Melvin J. Sykes, Baltimore, of counsel: Terry S. Bienstock (Bienstock & Clark, on brief) Miami, FL, for appellees, Comcast Cable of Maryland, Inc, et al.

F. Paul Bland, Jr. (Trial Lawyers for Public Justice, on brief, Washington, D.C.; Bruce M. Plaxen, Plaxen & Adler, P.A., on brief, Columbia; Robert K. Jenner, Greenberg & Bederman, on brief, Silver Spring; Kieron F. Quinn, Quinn, Gordon & Wolf, on brief, Baltimore) for petitioner, Douglas Harvey.

M. Miller Baker (Michael S. Nadel of McDermott, Will & Emery, on brief) Washington, DC, for respondent, Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.

J. Joseph Curran, Jr., Attorney General of Maryland, Kathryn M. Rowe, Assistant Attorney General, Annapolis, on brief, State of Maryland an amicus curiae filed on behalf of appellee.

Lawrence P. Fletcher–Hill, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, Daly D.E. Temchine, Kathy C. Potter, Epstein, Becker & Green, P.C., Washington, DC, on brief of amici curiae, ·Maryland Association of Health Plans, M.D., Individual Practice Association, Inc., Optimum Choice, Inc., Capital Care, Inc., Aetna U.S. Healthcare Inc., and The Prudential Insurance Company of America filed on behalf of appellee.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

We issued writs of certiorari in these cases to determine the constitutionality of retroactive provisions in two statutes enacted by the General Assembly.

Ch. 59 of the Acts of 2000, effective October 1, 2000, enacted detailed regulations governing provisions for late fees in "consumer contracts," including regulations concerning the allowable amounts of late fees. Section 5 of Ch. 59 stated that "this Act shall apply to all late fees provided for in contracts

entered into, or in effect, on or after November 5, 1995." In addition, Section 6 stated that the Act shall apply to all cases pending in courts on or after June 1, 2000, including those where final judgments had been rendered as long as all appeals had not been exhausted.

Ch. 569 of the Acts of 2000, effective June 1, 2000, generally authorized contracts between health maintenance organizations and subscribers to contain provisions "allowing the health maintenance organization to be subrogated to a cause of action that a subscriber has against another person." Ch. 569 went on to set forth some exceptions, limitations, and requirements with regard to such contractual subrogation provisions, including the requirement that a health maintenance organization's rates reflect any subrogation clause in its contracts. Section 2 of Ch. 569 provided that the new statute shall apply to cases pending on or after June 1, 2000, and Section 3 of Ch. 569 stated "[t]hat this Act shall apply to all subrogation recoveries by health maintenance organizations recovered on or after January 1, 1976."

The petitioners in the two cases before us challenge the retroactive provisions of Chs. 59 and 569 on numerous state and federal constitutional grounds. We shall hold that the retroactive provisions in both statutes violate Articles 19 and 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution. We shall not reach the federal constitutional issues or the other state constitutional issues raised by the petitioners.

I.

Since this opinion encompasses two separate cases in this Court, Nos. 71 and 121, we shall set forth the background and relevant facts of each case separately.

A. No. 71

The dispute in No. 71 had its genesis in this Court's opinion in *United Cable v. Burch*, 354 Md. 658, 732 A.2d 887 (1999). *Burch* was an action by consumer cable television subscribers

against their cable television provider, challenging the five dollar per month late fee that was charged to subscribers who did not pay their monthly bills by a particular date each month. This Court, in an opinion by Judge Rodowsky, extensively reviewed Maryland cases and other authorities and held that, under the common law rule in effect in Maryland, when money is not paid by a date certain in a contract " 'for the payment of a definite sum of money[,] *the measure of damages* is the amount of money promised to be paid, with legal interest,' " *United Cable v. Burch, supra,* 354 Md. at 669, 732 A.2d at 893, quoting Poe, *Pleading and Practice in the Courts of Law in Maryland* § 584C, at 608 (Tiffany ed.1925) (emphasis added by the *Burch* opinion). Consequently, the defendant United Cable was entitled to charge a late fee, when the principal was not paid by the due date, only at the legal rate of interest.

We continued in *Burch* by setting forth Article III, § 57, of the Maryland Constitution which states:

"The Legal Rate of Interest shall be Six per cent per annum, unless otherwise provided by the General Assembly."

We then reviewed several enactments by the General Assembly regulating certain late charges or exempting some late charges from the category of "interest," or otherwise dealing with specified late charges. The *Burch* opinion pointed out that "there is no statute that authorizes or regulates United's late charges, so that United's late charge remains subject to the common law rule." 354 Md. at 681, 732 A.2d at 899. As no statute provided to the contrary, the Court in *Burch* held that, under Article III, § 57, of the Constitution, six per cent per annum "is that rate by which United's liquidated damages provision must be measured." 354 Md. at 675, 732 A.2d at 896. The Court in *Burch* concluded as follows (354 Md. at 683, 732 A.2d at 900):

"The constitutionalized public policy of Maryland remains that the legal rate of interest is six percent and that, if any changes in that rate are to be made, they are to be made by

the General Assembly. Inasmuch as damages for breach of a contract to pay money are pegged to the lawful rate of interest, a change in that common law rule of damages, absent a statutory basis, would have the same effect as judicially changing the Constitution or as judicially enacting a statute that has not been enacted by the General Assembly."

The Court affirmed the trial court's judgment which had required that United Cable refund the greater part of the monthly late fee which it had charged each subscriber who did not pay on time.

Ch. 59 of the Acts of 2000 was a legislative response to the *Burch* decision, and, in that statute, the Legislature for the first time enacted statutory provisions regulating late fees in contracts like those involved in *Burch*. There is no challenge in this case to the prospective operation of Ch. 59, applying to late fees in consumer contracts, covered by the statute, entered into on or after October 1, 2000. The constitutional challenge is to the retroactive application of the statute.

Turning to the relevant facts in No. 71, several consumer subscribers of cable television services provided by Comcast Cable of Maryland, Inc., at various times in 1999, filed actions in the Circuit Court for Baltimore County and the Circuit Court for Harford County against Comcast Cable of Maryland, Inc., and several of its affiliated corporations (hereafter referred to collectively as "Comcast"). The plaintiffs sought to recover from Comcast monthly late fees which they had paid to Comcast, to the extent that such fees exceeded six per cent per annum. The Harford County actions were transferred to the Circuit Court for Baltimore County, and all of the actions were consolidated in February 2000.

Subsequently, after the passage of Ch. 59 of the Acts of 2000, the defendants moved to dismiss the actions on the ground that Ch. 59 validated the late fees and applied to pending causes of action, requiring that they be dismissed. The plaintiffs responded by arguing that the retroactive sec-

tions of Ch. 59 violated various provisions of the state and federal constitutions.

After the submission of memoranda and a hearing, the Circuit Court rejected the plaintiffs' constitutional arguments, held that the retroactive sections of Ch. 59 were valid, and granted the defendants' motion to dismiss. The only issues decided by the court were those relating to the constitutionality of Ch. 59.

The plaintiffs filed a notice of appeal and, prior to any proceedings in the Court of Special Appeals, filed in this Court a petition for a writ of certiorari. We granted the petition, *Dua v. Comcast,* 360 Md. 485, 759 A.2d 230 (2000).

## B. No. 121

Like No. 71, the controversy in No. 121 also began with a decision by this Court, *Riemer v. Columbia Medical Plan,* 358 Md. 222, 747 A.2d 677 (2000). The facts of *Riemer* were that several members or subscribers of Columbia Medical Plan, Inc., a health maintenance organization (HMO), who had been injured by negligent third parties, had received health care benefits from the HMO because of such injuries. The members of the HMO brought tort claims against the negligent third parties and received tort damages as a result of settlements or judgments. The HMO then asserted a "right" of subrogation, and received from the members reimbursements for the health care benefits which the HMO had earlier provided. The members of the HMO then brought an action against the HMO, seeking recovery of the money which had been reimbursed to the HMO and a declaratory judgment that the HMO had no right of subrogation and had "claim[ed] improperly a subrogation interest in and a lien against third-party settlement recoveries by [plaintiffs]." *Riemer v. Columbia Medical Plan, supra,* 358 Md. at 227, 747 A.2d at 680.

The trial court in *Riemer* granted judgment for the HMO, but this Court reversed. In an opinion by Judge Cathell, the Court held as follows (*Riemer,* 358 Md. at 233, 747 A.2d at 683, footnote omitted):

"We hold that generally, pursuant to sections 19–701(f) and 19–710(b) and (o) of the Health–General Article, and the general statutory scheme of Maryland's Health Maintenance Organization Act, an HMO may not pursue its members for restitution, reimbursement, or subrogation after the members have received a financial settlement from a third-party tortfeasor, any contract to the contrary notwithstanding. Restitution, reimbursement, and subrogation provisions are contrary to the express wording of subtitle 7 of Title 19 of the Health–General Article. Moreover, they are in conflict with the basic nature of HMOs based on subscriber per fee services. Under the basic concept of HMOs, a subscriber has no further obligation, primary or otherwise, beyond his or her fee for health services provided. Accordingly, there is, in any event, nothing for an HMO to be subrogated to. The subscriber is not a primary debtor. The HMO, as to the fees paid health care providers, i.e., doctors, hospitals, etc., is the primary debtor. We hold that the trial court erred ... and accordingly, we reverse."

Ch. 569 of the Acts of 2000 constituted the legislative response to *Riemer*. The General Assembly in that Act, for the first time, enacted a statutory basis for subrogation or reimbursement claims by an HMO out of their members' tort recoveries from negligent third parties.

The facts in No. 121 are as follows. Douglas Harvey was an employee of the Prince George's County Department of Corrections, and he was a member of an HMO, Kaiser Foundation Health Plan of the Mid–Atlantic, Inc. Harvey was injured in an automobile collision in December 1996, when a negligent driver crossed the center line of the road and collided with Harvey's vehicle. Kaiser provided medical care to Harvey, and subsequently Harvey received $36,000.00 from the tortfeasor's liability insurer. Kaiser asserted a lien against Harvey's tort recovery, representing the value of the medical services which the HMO had rendered. In 1999, Harvey paid Kaiser $3,396.30.

On June 26, 2000, shortly after Ch. 569 of the Acts of 2000 went into effect, Harvey filed in the Circuit Court for Montgomery County this action against Kaiser, seeking a declaratory judgment that the retroactive sections of Ch. 569 violated various provisions of the state and federal constitutions. After briefing and oral argument, the Circuit Court filed a declaratory judgment, declaring that Ch. 569 violated neither the Takings Clause of the Fifth Amendment nor the Fourteenth Amendment to the United States Constitution. The court further declared that Ch. 569 did not violate the following provisions of the Maryland Constitution: Article III, § 33; Article III, § 40; Article 8 of the Declaration of Rights; Article 19 of the Declaration of Rights; and Article 24 of the Declaration of Rights.

Harvey took an appeal, and, prior to any proceedings in the Court of Special Appeals, he filed in this Court a petition for a writ of certiorari which we granted. *Harvey v. Kaiser,* 362 Md. 359, 765 A.2d 142 (2001).

## C.

In this Court, the petitioners in Nos. 71 and 121, along with several *amici curiae* supporting them, challenge the retroactive provisions of Chs. 59 and 569 on the same multitude of constitutional grounds raised in the trial courts. They assert that the retroactive provisions of Chs. 59 and 569 violate both the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as impairing the obligation of contracts in violation of Article 1, § 10, cl. 1, of the United States Constitution.

In addition, it is contended that the retroactive portions of Chs. 59 and 569 violate the separation of powers requirement in Article 8 of the Maryland Declaration of Rights because the General Assembly was allegedly "acting in a judicial capacity." (Petitioner's brief in No. 121, at 39).[1] Petitioners also claim

---

1. Article 8 of the Declaration of Rights provides as follows:

that the retrospective portions of the statutes violate Articles 19 and 24 of the Maryland Declaration of Rights.[2] Petitioners in No. 71 also contend that the retroactive sections of Ch. 59 represent "the exercise of monopoly power" in violation of Article 41 of the Declaration of Rights. (Petitioners' brief at 37).[3]

The petitioners further maintain that the retroactive statutes are special laws in violation of Article III, § 33, of the Maryland Constitution,[4] and that they represent an unconsti-

---

"**Article 8. Separation of Powers.**

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said departments shall assume or discharge the duties of any other."

2. Article 19 states:

"**Article 19. Remedy for injury to person or property.**

"That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

Article 24 states:

"**Article 24. Due process.**

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

3. Article 41 provides:

"**Article 41. Monopolies.**

"That monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered."

4. Section 33 states:

"**Section 33. Local and special laws.**

"The General Assembly shall not pass local, or special Laws, in any of the following enumerated cases, viz.: For extending the time for the collection of taxes; granting divorces; changing the name of any person; providing for the sale of real estate, belonging to minors, or other persons laboring under legal disabilities, by executors, administrators, guardians or trustees; giving effect to informal, or invalid deeds or wills; refunding money paid into the State Treasury, or releasing persons from their debts, or obligations to the State, unless recommended by the Governor, or officers of the Treasury Department. And the General Assembly shall pass no special Law, for any

tutional taking of property under Article III, § 40, of the Maryland Constitution.[5]

Finally, it is argued in No. 71 that Article III, § 57, of the Maryland Constitution, permitting the General Assembly to provide for a rate of interest different from the constitutionally prescribed six per cent, does not authorize retroactive action by the Legislature but allows only prospective changes in the legal interest rate.

As previously indicated, we shall hold that the retrospective portions of Chs. 59 and 569 of the Acts of 2000 are unconstitutional under Articles 19 and 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution. We shall not reach any of the issues raised under the other provisions of the Maryland Constitution, and we shall not reach any of the federal constitutional issues raised by the petitioners.[6]

---

case, for which provision has been made, by an existing General Law. The General Assembly, at its first Session after the adoption of this Constitution, shall pass General Laws, providing for the cases enumerated in this section, which are not already adequately provided for, and for all other cases, where a General Law can be made applicable."

5. Article III, § 40, of the Maryland Constitution reads as follows:
"**Section 40. Eminent domain.**
"The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

6. As pointed out in *Frankel v. Board of Regents*, 361 Md. 298, 313–314 n. 3, 761 A.2d 324, 332 n. 3 (2000), by not reaching the federal constitutional issues "we do not suggest that the result in [these] case[s] would be any different if the sole issue were whether the [statutes] violated the" federal Constitution. "We simply are making it clear that our decision is based exclusively upon [the Maryland Constitution] and is in no way dependent upon the federal [Constitution]. *See Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983); *Perry v. State*, 357 Md. 37, 86 n. 11, 741 A.2d 1162, 1188 n. 11 (1999)."

## II.

We shall first address the issues under Article 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution. The petitioners and the *amici curiae* joining them argue that the retroactive provisions of Chs. 59 and 569 abrogate vested property rights protected by Article 24 and Article III, § 40, and that, therefore, the retroactive provisions are unconstitutional.

The respondents, as well as the *amici curiae* supporting their position, contend, as a matter of *federal* constitutional law, that "retroactive civil legislation is sustained if it has a rational basis" (respondents' brief in No. 71, at 13), that retroactive legislation is valid if there is " 'a rational legislative purpose' " (respondent's brief in No. 121, at 13), that the "rational basis test" is the "modern rule for analysis of retroactive legislation under the federal Due Process Clause" (State of Maryland's brief in No. 71, at 7), and that retroactive statutes adjusting "the benefits and burdens of economic life . . . will be upheld unless they are arbitrary or irrational" (State of Maryland's brief in No. 121, at 4). The second premise in the respondents' syllogism is that the Maryland constitutional provisions protecting property rights, namely Articles 19 and 24 of the Declaration of Rights and Article III, § 40, of the Constitution, are *in pari materia* with and " 'have long been equated with the Federal due process clause and . . . provide the same, *but no greater*, rights and protection,' " or, with respect to Article III, § 40, and the Fifth Amendment's Takings Clause, "are parallel and are treated equally for interpretation purposes" (respondent's brief in No. 121, at 9–10, 33). Therefore, according to the respondents, the standard for determining the validity of retrospective civil legislation, under both the Constitution of the United States and the Constitution of Maryland, is the rational basis test. Since, in the view of the respondents and the *amici curiae* joining them, the retrospective provisions of Chs. 59 and 569 of the Acts of 2000 are rational, they are valid under both the federal and state constitutions.

As previously discussed, we express no view as to the validity of the retrospective portions of Chs. 59 and 569 under the federal Constitution.[7] On the other hand, the many opinions of this Court concerning the validity under the Maryland Constitution of retroactive legislation make it clear that the retroactive provisions of Chs. 59 and 569 violate the Maryland Constitution. The respondents and *amici* on their side have not called to our attention any opinion by this Court which supports their analysis and the result which they seek.[8]

### A.

We shall first address the respondents' premise that Articles 19 and 24 of the Maryland Declaration of Rights, and Article III, § 40, of the Maryland Constitution, must be interpreted and applied precisely the same as the Takings Clause of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution.

Preliminarily, Article 19 of the Declaration of Rights has no counterpart in the United States Constitution, and most of our opinions interpreting and applying Article 19 have not relied on cases applying dissimilar provisions of the United States Constitution. *See, e.g., Robinson v. Bunch,* 367 Md. 432, 444,

---

7. We do note, however, that the Supreme Court's recent decision in *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), invalidating a retroactive Act of Congress imposing a liability upon employers, casts some doubt upon the respondents' federal constitutional analysis. The plurality opinion of the Supreme Court held that "the Coal Act's allocation of liability to Eastern violates the Takings Clause," 524 U.S. at 538, 118 S.Ct. at 2153, 141 L.Ed.2d at 480. The concurring opinion by Justice Kennedy took the position that the retroactive statute violated the Fifth Amendment's Due Process Clause.

8. The only opinions by judges of this Court which might arguably support the respondents' position are the dissenting opinions in *Cooper v. Wicomico County,* 284 Md. 576, 584–588, 398 A.2d 1237, 1241–1243 (1979) (Eldridge, J., joined by Cole, J., dissenting), and *Cooper v. Wicomico County,* 278 Md. 596, 604–609, 366 A.2d 55, 60–63 (1976) (Eldridge, J., joined by Levine, J., dissenting). Not a single brief in the present cases, on either side, has cited the majority or dissenting opinions in the *Cooper* cases.

788 A.2d 636, 644 (2002); *State v. Board of Education*, 346 Md. 633, 647, 697 A.2d 1334, 1341 (1997); *Ashton v. Brown*, 339 Md. 70, 102–106, 660 A.2d 447, 464–465 (1995); *Clea v. City of Baltimore*, 312 Md. 662, 680–681, 541 A.2d 1303, 1312 (1988); *Weyler v. Gibson*, 110 Md. 636, 653–654, 73 A. 261, 263 (1909). We shall address the issues raised under Article 19 in Part V of this opinion, *infra.*

■■■ Many provisions of the Maryland Constitution, such as Article 24 of the Declaration of Rights and Article III, § 40, of the Maryland Constitution, do have counterparts in the United States Constitution. We have often commented that such state constitutional provisions are *in pari materia* with their federal counterparts or are the equivalent of federal constitutional provisions or *generally* should be interpreted in the same manner as federal provisions. Nevertheless, we have also emphasized that, simply because a Maryland constitutional provision is *in pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart. Furthermore, cases interpreting and applying a federal constitutional provision are only persuasive authority with respect to the similar Maryland provision.

Thus, in *Attorney General v. Waldron*, 289 Md. 683, 714, 426 A.2d 929, 946 (1981), Judge Digges for the Court, referring to the equal protection component of Article 24 of the Declaration of Rights and the Equal Protection Clause of the Fourteenth Amendment, stated:

"Although the equal protection clause of the fourteenth amendment and the equal protection principle embodied in Article 24 are 'in pari materia,' and decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is independent, and a violation of one is not necessarily a violation of the other.

\* \* \*

"Nevertheless, because the State equal protection principle is possessed of independent animation, in [some] circum-

stances the application of Article 24 of the Maryland Declaration of Rights may require a result at variance with the Supreme Court's application of the fourteenth amendment's equal protection clause."

Another example is the self-incrimination privilege guaranteed by Article 22 of the Declaration of Rights and the equivalent privilege under the Fifth Amendment. In one of the cases pointing out that " 'Article 22 is generally *"in pari materia"* with its federal counterpart,' " we immediately continued: "There appear to be . . . two situations where the privilege under Article 22 has been viewed differently, and more broadly, than the privilege under the Fifth Amendment." *Choi v. State,* 316 Md. 529, 535 n. 3, 560 A.2d 1108, 1111 n. 3 (1989).

Article 26 of the Declaration of Rights has often been described as *in pari materia* with or the equivalent of the Fourth Amendment. Nonetheless, in a case interpreting and applying Article 26, *Gahan v. State,* 290 Md. 310, 322, 430 A.2d 49, 55 (1981), Judge Marvin Smith for the Court reiterated that,

"although a clause of the United States Constitution and one in our Declaration of Rights may be 'in pari materia,' and thus 'decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is · independent, and a violation of one is not necessarily a violation of the other.' "

*See Frankel v. Board of Regents,* 361 Md. 298, 313, 761 A.2d 324, 332 (2000) (pointing out that Article 24 and the Fourteenth Amendment are complementary but independent, and that governmental action may be unconstitutional under the authority of Article 24 alone). *Accord: Maryland Aggregates v. State,* 337 Md. 658, 671–672 n. 8, 655 A.2d 886, 893 n. 8, *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 856 (1995); *Verzi v. Baltimore County,* 333 Md. 411, 417, 635 A.2d 967, 970 (1994); *Kirsch v. Prince George's County,* 331 Md. 89, 97, 626 A.2d 372, 376, *cert. denied,* 510 U.S. 1011, 114 S.Ct. 600,

126 L.Ed.2d 565 (1993); *Murphy v. Edmonds,* 325 Md. 342, 354, 601 A.2d 102, 108 (1992).

Consequently, in applying Article 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution, decisions applying federal constitutional provisions are no more than persuasive authorities. Moreover, because of the numerous opinions by this Court dealing with the constitutionality of retroactive civil statutes, principles of *stare decisis* dictate the result in the two cases at bar. Thus, in applying Article 24 of the Declaration of Rights and Article III, § 40, of the Constitution to the present cases, there is little reason to rely on non-binding out-of-state authority.

### B.

■ It has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how "rational" under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else. The state constitutional standard for determining the validity of retroactive civil legislation is whether vested rights are impaired and *not* whether the statute has a rational basis. Thus, when the General Assembly 150 years ago changed the elements of adverse possession so as to make it easier for the adverse possessor to divest the paper title holder of his property, this Court invalidated the retroactive portion of the statute. *Thistle v. The Frostburg Coal Co.,* 10 Md. 129 (1856). In language which has often been repeated since, the Court in *Thistle* stated (*id.* at 144–145):

"It is clearly not within the scope of the legislative power, to give to a law the effect of taking from one man his property and giving it to another, by any new rule of tenure, retroactive in its character.

\* \* \*

"Hence, as we have said, it was not in the power of the legislature to change this rule of law, so far as to give it a

retroactive operation, because it would virtually be taking the land of one man, held by a good legal title, and giving it to another, who the law has said had none."

Moreover, with regard to the argument that the "rational basis" test is the appropriate standard for determining the validity of retroactive legislation, this Court has held that the General Assembly's view "of right or justice" will not validate retroactive abrogations of vested rights. In holding unconstitutional a retroactive statute having the effect of validating a void deed and thereby abrogating a widow's vested dower right, Judge Alvey for the Court in *Grove v. Todd,* 41 Md. 633, 641–642 (1875), emphasized:

"She has a right to insist, according to the Declaration of Rights, Art. 23 [now Art. 24], that she shall not be disseized of her freehold, liberties, or privileges, or deprived of her property, otherwise than by the judgment of her peers, or by the law of the land; or, as these latter terms are defined, by due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights. 2 *Kent's Com.,* 13; *The Regents v. Williams,* 9 *Gill & John.,* 412; *Wright v. Wright,* 2 Md., 452; *Westervelt v. Gregg,* 12 N.Y., 209; *Reese v. City of Watertown,* 19 *Wall.,* 122. The deed being utterly void and without effect as to her estate, if she is now divested of her right of dower, it is by force of the statute and not of the deed; the statute operating through the form of the otherwise void deed to transfer the estate. *To concede to the Legislature the power, by retroactive legislation,* adopted without the consent of the party to be affected, *to accomplish such a result, is at once to concede to it the power to divest the rights of property and transfer them without the forms of law, upon any notion of right or justice that the Legislature may think proper to adopt:—a concession that can never be made* in a government where the rights of property do not depend upon the mere will of the Legislature, and which professes to maintain a regular system of laws for the protection of the rights of property of its citizens." (Emphasis added).

*See also Cooper v. Wicomico County,* 284 Md. 576, 584, 398 A.2d 1237, 1241 (1979), where, more recently, this Court held that the General Assembly's purpose, "to alleviate the effects of inflation which rendered future payments under prior [workers'] compensation awards totally inadequate to meet an employee's needs," did not validate a retroactive statute which increased the amounts payable under prior workers' compensation awards, and which indirectly increased the amounts payable by employers. The Court took the position that the retroactive statute affected the employers' "contractual and other vested rights" and, therefore, was not "in conformity with . . . due process requirements"*(ibid.)*.

■ The above-quoted opinions are not simply historical relics. Instead, the principles of Maryland constitutional law there set forth were reiterated very recently in *Langston v. Riffe,* 359 Md. 396, 418, 754 A.2d 389, 400 (2000), and *Rawlings v. Rawlings,* 362 Md. 535, 559, 766 A.2d 98, 111 (2001), where Judges Cathell and Harrell for the Court emphasized that even "a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights."

From the earliest cases to the present, this Court has consistently taken the position that retroactive legislation, depriving persons or private entities of vested rights, violates the Maryland Constitution, regardless of the reasonableness or "rational basis" underlying the legislation. In addition to the above-cited cases, *see, e.g., Berrett v. Oliver,* 7 G. & J. 191, 206 (1835) (With regard to legislation which, *inter alia,* retroactively annulled deeds, the Court stated: "Can the Legislature exercise such a power? Unquestionably not"); *University v. Williams,* 9 G. & J. 365, 412–413 (1838) (Transferring the property of a private university to another body, without the former's consent, violated what is now Article 24 of the Declaration of Rights); *Baugher, et al. v. Nelson,* 9 Gill 299, 309 (1850) ("[A]n act which divests a right through the instrumentality of the remedy and under the pretense of regulating it, is as objectionable as if the shaft was leveled directly at the right itself"); *Wilderman v. Mayor & City Council of Balti-*

*more,* 8 Md. 551, 556 (1855) (When the testator died in 1838, the "rights of the residuary devisees thereby became immediately vested, and it was not in the power of the Legislature by giving the act of 1842, chap. 86, such a retrospective operation, so as to divest the vested rights acquired under the will"); *State, use of Isaac v. Jones,* 21 Md. 432, 437 (1864) (The "abrogation or suspension of a remedy, necessary to enforce the obligation of an existing contract, . . . is void"); *Trustees of M.E. Church v. Warren,* 28 Md. 338, 355 (1868) (the General Assembly's enactment of retroactive legislation "transcended its constitutional powers"); *Bramble v. State, use of Twilley,* 41 Md. 435, 442 (1875) (A person's right to a sum of money, under a statute, "could not have been affected by a subsequent repealing Act"); *Williar v. Loan Ass'n,* 45 Md. 546, 558 (1877) ("It has been repeatedly held by this Court that the Legislature cannot by a retroactive law, take away vested rights"); *Rock Hill College v. Jones,* 47 Md. 1, 17–18 (1877) (" 'A law . . . can be repealed by the law-giver; but the rights which have been acquired under it while it was in force, do not thereby cease.' * * * [W]here rights . . . have become vested, such rights are considered as being beyond the power of the Legislature to divest them"); *Remington v. Metropolitan Savings Bank,* 76 Md. 546, 548, 25 A. 666, 667 (1893) (Distributees' rights became vested upon the testator's death, "and could not be divested by any subsequent legislation, because it would divest vested rights"); *Garrison v. Hill,* 81 Md. 551, 556, 32 A. 191, 192 (1895) (The appellant was entitled to obtain certain property, and the "Legislature had no power to take from her this vested right"); *Manning v. Carruthers,* 83 Md. 1, 7–8, 34 A. 254, 255 (1896) (Legislation which "would entirely destroy the right of action which was vested" cannot be given retroactive effect because giving it such "effect would render it unconstitutional, as being an attempt to destroy vested rights of action"); *Baumeister v. Silver,* 98 Md. 418, 427, 56 A. 825, 828 (1904) (Parties "had a vested right to sue when the Act of 1894 was passed . . ., and the Legislature could not take away that right"); *Harris v. Whiteley,* 98 Md. 430, 442, 56 A. 823, 824 (1904) ("[I]t was beyond [the Legislature's] power· to

divest or impair ... any vested rights of property acquired under previously existing laws"); *Md. Jockey Club v. State,* 106 Md. 413, 419, 67 A. 239, 241 (1907) ("The effect of such [subsequent] legislation [was] not only to impair vested rights, but to take the property of the contributors under the [earlier] Act of 1870, and give it to others, in clear violation of the 23rd Article [now Article 24] of our Bill of Rights"); *Anne Arundel County v. United Rys. Co.,* 109 Md. 377, 391, 72 A. 542, 547 (1909) (The "Legislature could not under the guise of an amendment to the charter of the company divest without compensation its vested property right acquired in the legitimate exercise of the powers conferred by its charter while that instrument remained in force"); *Ireland v. Shipley,* 165 Md. 90, 98, 166 A. 593, 596 (1933) (The State "has not the power to destroy vested rights without compensation"); *Allen v. Dovell,* 193 Md. 359, 363–364, 66 A.2d 795, 797 (1949) (The "Legislature cannot cut off all remedy and deprive a party of his [accrued] cause of action"); *Comptroller v. Glenn L. Martin Co.,* 216 Md. 235, 258, 140 A.2d 288, 300, *cert. denied,* 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958) (A tax statute sought "to reach transactions completed long before its enactment," and the Court held "that the retroactive application of [the Act] would be in conflict with Article 23 [now Article 24] of the Maryland Declaration of Rights"); *Smith v. Westinghouse Electric,* 266 Md. 52, 57, 291 A.2d 452, 455 (1972) (A statute, which retroactively created a cause of action, resulting in reviving a cause of action that was otherwise barred, was held to deprive the defendant of property rights in violation of Article 24 of the Declaration of Rights); *Dryfoos v. Hostetter,* 268 Md. 396, 408, 302 A.2d 28, 34 (1973) (A retroactive statute was held to be invalid, because "[t]o reach any other result would be tantamount to saying that the Legislature could take a property interest from one person and vest it in another, which cannot be done by statute"); *Washington Nat'l Arena v. Prince George's Co.,* 287 Md. 38, 45 n. 3, 410 A.2d 1060, 1064 n. 3, *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980) (The "application of a 1976 retrospective tax statute to voluntary transactions fully completed as long ago as 1968 ...

could not be upheld under the . . . state constitutional provisions protecting property rights"); *Vytar Associates v. City of Annapolis*, 301 Md. 558, 574, 483 A.2d 1263, 1271 (1984) (Retroactive application of statutes "to authorize imposition of . . . rental dwellings license fees . . . is invalid as impairing property rights in violation . . . of Article 24 of the Maryland Declaration of Rights"); *WSSC v. Riverdale Fire Co.*, 308 Md. 556, 564, 520 A.2d 1319, 1323 (1987) (A "statute, even if intended to apply retrospectively, will not be given that effect if it would take vested rights"); *Waters v. Montgomery County*, 337 Md. 15, 29, 650 A.2d 712, 718 (1994) ("In the final part of a retroactivity analysis, a court must determine whether the retroactive application of the statute or ordinance would interfere with vested rights").

The specific Maryland constitutional provision which is most often cited in the above-mentioned cases, for the principle that retroactive legislation impairing vested rights is invalid, is Article 24 of the Declaration of Rights, which is often referred to as the Maryland Constitution's due process clause, and which, in language based on the Magna Carta, forbids, *inter alia*, deprivations of property not in accordance with "the law of the land." *See, e.g., Vytar Associates v. City of Annapolis, supra*, 301 Md. at 574, 483 A.2d at 1271; *Cooper v. Wicomico County, supra*, 284 Md. at 584, 398 A.2d at 1241; *Dryfoos v. Hostetter, supra*, 268 Md. at 408, 302 A.2d at 34; *Smith v. Westinghouse Electric, supra*, 266 Md. at 57, 291 A.2d at 455; *Comptroller v. Glenn L. Martin Co., supra*, 216 Md. at 258, 140 A.2d at 300; *Allen v. Dovell, supra*, 193 Md. at 364, 66 A.2d at 797; *Md. Jockey Club v. State, supra*, 106 Md. at 419, 67 A. at 241; *Grove v. Todd, supra*, 41 Md. at 641; *University v. Williams, supra*, 9 G. & J. at 412.

Other cases, referring to retroactive legislation which unconstitutionally "take[s] vested rights" (*WSSC v. Riverdale Fire Co., supra*, 308 Md. at 564, 520 A.2d at 1323), or "destroy[s] vested rights without compensation" (*Ireland v. Shipley, supra*, 165 Md. at 98, 166 A. at 596), or "divest[s] without compensation [a corporation's] vested property right" (*Anne Arundel County v. United Rys. Co., supra*, 109 Md. at

391, 72 A. at 547), seem to invoke Article III, § 40, of the Maryland Constitution, which prohibits the taking of private property "without just compensation." Some opinions appear to invoke both Article 24 of the Declaration of Rights and Article III, § 40, indicating that retroactive civil statutes are invalid if they "take vested rights, [or] deny due process" (*WSSC v. Riverdale Fire Co., supra,* 308 Md. at 564, 520 A.2d at 1323) or that they are invalid because they violate Maryland "constitutional provisions protecting property rights" (*Washington Nat'l Arena v. Prince George's Co., supra,* 287 Md. at 45 n. 3, 410 A.2d at 1064, n. 3; *Vytar Associates v. City of Annapolis, supra,* 301 Md. at 572, 483 A.2d at 1270). *See also Granahan v. Prince George's County,* 326 Md. 346, 357, 605 A.2d 91, 97 (1992).

Several opinions by this Court simply take the position that retrospective statutes impairing vested rights violate the Maryland Constitution, without citing a specific constitutional provision and without using descriptive language indicating which constitutional provision or provisions are involved. *See, e.g., Safe Deposit Co. v. Marburg,* 110 Md. 410, 415, 72 A. 839, 841 (1909); *Harris v. Whiteley, supra,* 98 Md. at 442–444, 56 A. at 824–825; *Baumeister v. Silver, supra,* 98 Md. at 427–428, 56 A. at 828–829; *Manning v. Carruthers, supra,* 83 Md. at 7–8, 34 A. at 255–256; *Garrison v. Hill, supra,* 81 Md. at 556–557, 32 A. at 192–193; *Remington v. Metropolitan Savings Bank, supra,* 76 Md. at 548–549, 25 A. at 667; *Rock Hill College v. Jones, supra,* 47 Md. at 17–18; *Bramble v. State, use of Twilley, supra,* 41 Md. at 442; *Trustees of M.E. Church v. Warren, supra,* 28 Md. at 355; *Thistle v. Frostburg Coal Co., supra,* 10 Md. at 144–145; *Wilderman v. Mayor & City Council of Baltimore, supra,* 8 Md. at 556.

In light of this Court's opinions, it is clear that retrospective statutes abrogating vested property rights (including contractual rights) violate the Maryland Constitution. To reiterate, the central issue, in cases like the present ones, is whether vested rights are violated and not whether the retroactive statutes are "rational." The Court's opinions indicate that the particular provisions of the Constitution which

are violated by such acts are Article 24 of the Declaration of Rights and Article III, § 40, of the Constitution. Furthermore, these constitutional provisions literally cover the matter. A statute having the effect of abrogating a vested property right, and not providing for compensation, does "authoriz[e] private property, to be taken . . . , without just compensation" (Article III, § 40). Concomitantly, such a statute results in a person or entity being "deprived of his . . . property" contrary to "the law of the land" (Article 24).[9]

### C.

In arguing against a "vested rights" analysis, the respondents maintain that the "term 'vested rights' adds nothing to this Constitutional inquiry, . . . because 'it has long been recognized that the term "vested rights" is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute' " (respondent's brief in No. 121, at 9). They assert that the "concept of 'vested right' is not a guide for reaching a conclusion, but a label placed on a result already reached" (respondents' brief in No. 71, at 14). In support of these propositions, the respondents quote a passage from a law review article which, in a footnote in *Washington Nat'l Arena v. Prince George's Co.*, *supra*, 287 Md. at 46 n. 4, 410 A.2d at 1065 n. 4, this Court noted was the view of "one

---

9. We recognize that, in some contexts, there are differences between the analyses applied when determining whether particular governmental action constituted an unconstitutional deprivation of property in violation of Article 24 of the Declaration of Rights and an unconstitutional taking of property in violation of Article III, § 40, of the Maryland Constitution. Nevertheless, there are also situations involving an overlap, where this Court has held that the same governmental action violates both Article 24 and Article III, § 40. *See* the discussions in *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick*, 286 Md. 1, 8–18, 405 A.2d 241, 244–250 (1979); *Bureau of Mines v. George's Creek*, 272 Md. 143, 156–165, 321 A.2d 748, 755–760 (1974); *Arnold v. Prince George's Co.*, 270 Md. 285, 294, 311 A.2d 223, 228 (1973); *Leet v. Montgomery County*, 264 Md. 606, 611–616, 287 A.2d 491, 494–497 (1972). The opinions of this Court, holding that retrospective statutes impairing vested rights are unconstitutional, are clearly based on both Article 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution.

commentator." *See also Langston v. Riffe, supra,* 359 Md. at 420, 754 A.2d at 402, quoting from the *Washington Nat'l Arena* footnote.

The law has traditionally employed many terms such as "vested rights," "accrual," "choate" and "inchoate," "proximate cause," "consideration," "malice," "scope of employment," and hundreds more, for purposes of describing particular concepts, activities, states, standards, elements of legal actions, etc. These types of terms are all to some extent conclusory, and one must examine case law, other legal authorities, and history to determine fully their meaning, scope, and applications. Nonetheless, such terms make up a large part of our legal system and are indispensable for a society governed by the rule of law. They do have meanings and can satisfactorily be utilized in the resolution of cases. See, for example, this Court's discussion and application of the term "actual malice" in *Owens–Illinois v. Zenobia,* 325 Md. 420, 455–460 and n. 20, 601 A.2d 633, 650–653 and n. 20 (1992), in the context of tort damages.

The concept of vested property rights, in connection with retroactive civil legislation, has been developed in a multitude of this Court's opinions. With some exceptions, the concept includes that which is regarded as a property right under Maryland property law.[10] With regard to retroactive legislation, an examination of our opinions discloses that the term "vested rights" is more precise, less conclusory, and less subjective, than the notion of "rational basis" argued for by the respondents and the *amici curiae* supporting them.

### III.

The respondents, along with the *amici curiae* joining them, next take the position that, even under a "vested

---

**10.** The meaning of "property" under Maryland law is quite broad. *See, e.g.,* Maryland Rule 1–202(v) (" 'Property' includes real, personal, mixed, tangible or intangible property of every kind"); *Hoffman Chev. v. Wash. Co. National Savings Bank,* 297 Md. 691, 701 n. 4, 467 A.2d 758, 764 n. 4 (1983) ("a contemporary understanding of property also includes choses in action").

rights" standard, a plaintiff's "ability to bring a cause of action ... cannot be deemed a 'vested right'" (respondent's brief in No. 121, at 17), and that, because "a cause of action has accrued, standing alone, will not render the cause of action immune from extinction by a retroactive statute" (respondents' brief in No. 71, at 34). Some, but not all, of those on the respondents' side seem to acknowledge that this Court's opinions hold that there is a vested right in an accrued common law cause of action but that "[t]here is no vested right to an accrued *statutory* cause of action in Maryland," and that the cause of action in No. 71 is statutory (State of Maryland's brief in No. 71, at 12, emphasis supplied). Even if we view Chs. 59 and 569 as statutes abrogating causes of action, and not statutes abrogating the right to sums of money, an examination of this Court's opinions demonstrates that, with some exceptions not here present, there is a vested right in an accrued cause of action and that the Maryland Constitution precludes the impairment of such right. Furthermore, this principle applies to both common law and statutory causes of action.[11]

### A.

 Although there may not ordinarily be "a constitutionally protected vested property right in a particular ...

---

11. The State's assertion, that the cause of action in No. 71 is "statutory," is puzzling. Our cases have made it clear that an action to recover excess interest, even when the applicable legal interest rate is set by statute, is a common law action. *Williar v. Loan Ass'n*, 45 Md. 546, 559 (1877) ("[A] suit like the present, to recover money which had been paid by the plaintiff upon a usurious contract, in excess of the legal rate of interest * * * was not conferred by the Code, nor was it based upon the provisions of the Code, but existed at common law"); *Scott v. Leary*, 34 Md. 389, 394 (1871) ("It is undeniable that at common law a party who has paid excessive interest may recover it back in an action for money had and received").

In addition, the proper legal rate of interest in No. 71 was not set by statute but was set by Article III, § 57, of the Maryland Constitution. In Maryland, an action to enforce state constitutional rights is a recognized common law cause of action. *Widgeon v. Eastern Shore Hosp. Center*, 300 Md. 520, 479 A.2d 921 (1984).

cause of action" accruing *after* a statute limits or abrogates the cause of action, *Johnson v. Maryland State Police,* 331 Md. 285, 298–299, 628 A.2d 162, 168 (1993), there normally is a vested property right in a cause of action which has accrued prior to the legislative action. This Court has consistently held that the Maryland Constitution ordinarily precludes the Legislature (1) from retroactively abolishing an accrued cause of action, thereby depriving the plaintiff of a vested right, and (2) from retroactively creating a cause of action, or reviving a barred cause of action, thereby violating the vested right of the defendant.

The issue has arisen in many cases involving statutes which shortened the period of time in which particular causes of action must be brought or placed other restrictions on causes of action. This Court has regularly held that such statutes cannot constitutionally bar an accrued cause of action which, under prior law, was viable on the date the new statute was enacted. The Maryland Constitution requires that a plaintiff must have a reasonable period of time, after the enactment of the new statute, to bring the cause of action which existed under prior law.

For example, in *Garrison v. Hill, supra,* 81 Md. 551, 32 A. 191, the appellant filed in 1894, in the Orphans' Court of Baltimore City, a caveat to a will which had been admitted for probate in February 1889. The caveat would have been timely prior to the enactment of Ch. 405 of the Acts of 1894. That statute, however, required that caveats or other objections to the validity of a will be filed within three years from its probate. The Orphans' Court dismissed the caveat on the ground that it was filed too late, but this Court, in an opinion by Judge Andrew Hunter Boyd, reversed, holding that the appellant's cause of action was a vested right which the Legislature could not impair. The Court explained (81 Md. at 556–557, 32 A. at 192–193, emphasis supplied):

"Prior to the Act of 1894, it was the established law of this State that no lapse of time would exclude the inquiry whether a certain paper constituted the will of a party or not. *Emmert v. Stouffer,* 64 Md. 559; *Clagett v. Hawkins,*

11 Md. 387. The appellant, therefore had a vested right in the property left by Mrs. Johnson, provided, of course, she can establish the facts alleged in her petition, *and as the law stood she had the right to take steps to recover it. The Legislature had no power to take from her this vested right.* It cannot be done on the theory that the law in question only affects the remedy, for, as was said in *Baugher v. Nelson,* 9 Gill, 299, *an Act which divests a right through the instrumentality of the remedy, and under the pretence of regulating it, is as objectionable as if aimed at the right itself.* * * * The Legislature can unquestionably limit existing claims, provided a reasonable time is allowed after the passage of the Act for parties interested to institute proceedings, but it cannot bar a past right of action without providing a reasonable time within which suit can be brought. There is no difficulty in applying this statute to wills probated after the passage of the Act, nor would there be any legal objection to making it applicable to wills probated within such time before the Act was passed, as would still give those interested a reasonable time within which to commence proceedings, but ... it cannot be made retroactive so as to affect those that have been already probated three years or more...."

In *Baumeister v. Silver, supra,* 98 Md. 418, 56 A. 825, the Court, again in an opinion by Judge Boyd, dealt with a different 1894 statute that abolished certain grounds which, under prior law, had extended or tolled periods of limitations. Relying upon *Garrison v. Hill, supra,* the Court in *Baumeister,* 98 Md. at 427, 56 A. at 828, held that the beneficiaries under the prior law "had a vested right to sue when the Act of 1894 was passed ..., and the Legislature could not take away that right without allowing some reasonable time within which they could sue."

Several other cases are to the same effect. *See Allen v. Dovell, supra,* 193 Md. at 363–364, 66 A.2d at 797 (The "Legislature cannot cut off all remedy and deprive a party of his right of action by enacting a statute of limitations applicable to an existing cause of action in such a way as to preclude

any opportunity to bring suit. * * * [But it can] regulate the time within which suits may be brought, provided that the new law allows a reasonable time after its enactment for the assertion of an existing right or the enforcement of an existing obligation"); *Ireland v. Shipley, supra,* 165 Md. at 99, 166 A. at 596 (Statutes may not "bar the enforcement of rights existing at the time they were passed"); *Safe Deposit Co. v. Marburg, supra,* 110 Md. at 414, 72 A. at 841 (The "Legislature [has the power] to pass laws which may result in vesting good titles in those holding lands by adverse possession— provided, of course, the former owners have a reasonable time after the passage of such laws within which to assert their rights"); *Manning v. Carruthers, supra,* 83 Md. at 7–8, 34 A. at 255 (If an enactment shortening a statute of limitations were given retrospective effect, it "would entirely destroy the right of action which was vested ... [Such application] would render it unconstitutional, as being an attempt to destroy vested rights of action"); *State, use of Isaac v. Jones, supra,* 21 Md. at 437 ("[T]he abrogation or suspension of a remedy, necessary to enforce the obligation of an existing contract ... is ... void").

The opposite situation was presented in *Smith v. Westinghouse Electric, supra,* 266 Md. 52, 291 A.2d 452, involving a statutory provision which retroactively created a statutory cause of action, resulting in reviving a cause of action that had been barred by the running of limitations. By Ch. 784 of the Acts of 1971, the General Assembly lengthened the statute of limitations for wrongful death actions from two years to three years, and Ch. 784 contained a provision making the statute retroactive. The plaintiffs in *Smith v. Westinghouse,* who were the widow and minor children of the deceased, filed a wrongful death action on June 9, 1971, which was more than two years but less than three years after Mr. Smith's death. This Court in *Smith* initially pointed out that the wrongful death cause of action was entirely statutory, and that the period within which to file suit was part of that statutory cause of action. After reviewing some cases dealing with retroactive

statutes, the Court in *Smith* then held, *inter alia*, as follows (266 Md. at 57, 291 A.2d at 455):

> "The provision of the Laws of 1971, Ch. 784, which purports to give retroactive effect to such Act is unconstitutional in that it violates . . . the Declaration of Rights of the State of Maryland, Article 23 [now Article 24]."

The principle that the Legislature is constitutionally precluded from abrogating an accrued cause of action was applied to an action for the recovery of excess interest in *Williar v. Loan Ass'n, supra*, 45 Md. 546. That case involved mortgage interest, and the plaintiff borrower and the defendant lender finally settled the mortgage debt in September 1875. In October 1875, the borrower filed an action against the lender in the Circuit Court for Baltimore County, seeking to recover interest in excess of the legal rate. The unlawful excess interest had been provided for in the note, demanded by the lender, and paid to the lender. Before the case was decided in the Circuit Court, Ch. 358 of the Acts of 1876 was enacted. That statute abrogated the " 'cause of action [for excess interest] in any case where the . . . promissory note, . . . or other evidence of indebtedness, has been redeemed or settled for by the obligor or obligors, in money or other valuable consideration. . . .' " *Williar*, 45 Md. at 555. The statutory language "show[ed] plainly the intent of the Legislature that it should have a retroactive operation, and apply to all [pending] cases," *id.* at 556. The Circuit Court rendered judgment for the defendant based on the 1876 retroactive statute. The plaintiff appealed, arguing both (1) that he "had a vested right to his remedy [which] cannot be taken from him by any subsequent legislation" and (2) that the statute violated the Contract Clause of the United States Constitution.[12] *Id.* at 550.

This Court in *Williar* reversed, holding that it was not "within the constitutional power of the Legislature, by a retroactive statute, to take away or impair the plaintiff's right

---

12. Article I, § 10, cl. 1, of the United States Constitution.

to maintain the suit." 45 Md. at 557. The decision in *Williar* was based both on the Contract Clause of the United States Constitution and on the protection of a vested property right (*i.e.*, an accrued common law cause of action) under the Maryland Constitution and earlier Maryland cases. As to the latter ground, Judge Bartol for the Court in *Williar* explained (*id.* at 558):

> " 'But a law which deprives a party of all legal remedy must necessarily be void.' It has been repeatedly held by this Court that the Legislature cannot by a retroactive law, take away vested rights. *Baugher v. Nelson*, 9 Gill, 309; *Wilderman v. Baltimore*, 8 Md. 551; *Bramble v. Twilley*, 41 Md. 436. The application of this rule to the case before us, depends altogether upon the nature of the legal right asserted by the plaintiff. The Code, Art. 95, fixes the legal rate of interest, and declares that a person guilty of usury shall forfeit all the excess above the legal interest."

And later the Court continued (*id.* at 559–560, emphasis added):

> "The provisions of the Code have no other application to the case, except as they fix the legal rate of interest to which the lender is entitled, all in excess of that rate paid to him is money received by him in violation of law, to which he had no legal right, and which the other party is entitled to recover back in an action of *assumpsit*, as money had and received to his use.

> "In such case the implied *assumpsit* arises at the common law. The right of action is not conferred by the Code, which is resorted to as evidence fixing the legal rights of the parties under the contract, as respects the rate of interest, but is not the ground of the right of action. This is the effect of the decision in *Scott v. Leary, supra*, which seems to us to be conclusive of the case. It being clear both upon reason and authority that a claim or *right of action of this kind when it has become vested, is protected by the constitutional provision, and cannot be destroyed or taken away by the Legislature by a retroactive law.*

" 'A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Where it springs from contract, or from the principles of the common law, it is not competent for the Legislature to take it away.' Cooley on Const. Lim. 362."

The *Williar* decision is directly applicable in No. 71, and the principle applied in *Williar* and the other cases discussed above is controlling in No. 121.[13]

### B.

■ There are some limitations to the principle that the Maryland Constitution precludes the Legislature from retroactively impairing an accrued cause of action. For example, the Court has held that the Legislature may retroactively abrogate a remedy for the enforcement of a property or contract right when an alternative remedy is open to the plaintiff. *See Wilson v. Simon,* 91 Md. 1, 5–7, 45 A. 1022, 1022–1023 (1900). There may be other limitations, not pertinent to the present cases, recognized by this Court's opinions.

---

**13.** The respondents attempt to circumvent the holding in *Williar* by asserting that the decision in that case was based entirely upon the Contract Clause of the United States Constitution and that *Williar*'s Contract Clause holding is inconsistent with subsequent decisions of the Supreme Court under the Contract Clause. The basis for the respondents' assertion that *Williar* decided only the Contract Clause issue appears to be the citation to that Clause in the opinion, whereas there is no citation to a specific provision of the Maryland Constitution. As previously indicated, we do not reach the question of whether *Williar*'s federal Contract Clause holding remains viable.

It is clear, however, from the arguments of counsel in *Williar* set forth in the Maryland Reports (45 Md. at 550), from the Court's summary of counsel's argument (*id.* at 557–558), from the language of the Court's opinion (*id.* at 558–560), and from the Court's reliance upon prior Maryland cases involving vested property rights, that the decision in *Williar* was grounded both on the federal Contract Clause and on the Maryland constitutional protection of vested property rights. In addition, subsequent Maryland cases dealing with vested property rights or "vested rights of action" have relied on *Williar. See, e.g., Manning v. Carruthers,* 83 Md. 1, 8, 34 A. 254, 255 (1896).

The only limitation which merits any discussion in this opinion is that applied in *Baugher, et al. v. Nelson, supra,* 9 Gill 299. The *Baugher* decision is relied on heavily by the respondents in the two cases at bar. It does not, however, support the respondents' position.

The *Baugher* case involved a suit by Robert Nelson, filed in September 1846, against John Baugher and three other persons named Grinder. Nelson sought to recover the principal amount and interest, *at the legal rate,* that was due on a note executed in 1840 by the defendants. Baugher and the Grinders filed a plea in bar of the action, asserting that the 1840 note itself had provided for more interest than was allowed by law and that, under a statute which was in effect in 1840, the provision for unlawful excess interest relieved the defendants of any obligation to pay the principal or interest at the legal rate. Ch. 352 of the Acts of 1845, enacted on March 10, 1846, and expressly applying to all suits brought after March 10, 1846, regardless of when the underlying note was executed, effectively amended the prior statute and, as applied to the *Baugher* case, would prevent any forfeiture by Nelson of the principal amount of the note and interest at the legal rate. The trial court held in favor of the plaintiff Nelson, and this Court affirmed.

After holding that Ch. 352 of the Acts of 1845 was clearly retroactive with regard to notes executed before its enactment, the *Baugher* opinion went on to point out that the issue before the Court was the constitutionality of the retroactive aspect of Ch. 352. The Court also pointed out that the defendants-appellants were not relying on either the Contract Clause or the Ex Post Facto Clause of the United States Constitution (9 Gill at 305), and that the question before the Court was whether the defendants had been unconstitutionally "divested . . . of a vested and valuable right" (*id.* at 306). The Court went on to state that, when a borrower pays interest exceeding the legal rate, "both the courts of law and equity will enable him to recover back the excess paid beyond the principal and lawful interest" (*id.* at 308). The Court in *Baugher* then held that a retrospective "act which divests a

[vested] right through the instrumentality of the remedy ... is as objectionable as if the" vested right itself was abolished, but that "in this case no vested right was divested." *Id.* at 309. The Court concluded by holding that, while a borrower is justified "in law in resisting the payment of illicit interest" nevertheless "there can be no vested right" in a forfeiture of the principal and the amount of interest to which the lender was legally entitled (*ibid.*).

The instant cases do not, of course, involve a forfeiture of principal or legal interest or any statutory rights which existed prior ·to the enactment of the retroactive statutes. Case No. 71, on the contrary, involves the same type of "illicit interest" which the *Baugher* opinion stated would be recoverable by a debtor. In Case No. 121, Kaiser had no subrogation right until Ch. 569 of the Acts of 2000 was enacted.

*Baugher,* rather than furnishing support for the respondents' arguments, clearly supports the position of the petitioners. This has been underscored by subsequent cases in this Court discussing or citing *Baugher.* Thus, in *Williar v. Loan Ass'n, supra,* 45 Md. 546, involving a suit by the borrower to recover excess interest, the lender, relying upon the *Baugher* case, argued that the borrower had no "vested right" to recover the unlawful excess interest and that the retroactive statute did not "deprive the appellant of any vested right ...," (*id.* at 553). The Court rejected the argument, distinguishing *Baugher* from the circumstances in *Williar.* Judge Bartol for the Court explained in *Williar* as follows (*id.* at 558–559):

"We refer to *Cooley on Cons.Lim.*, 284 to 294, where this subject is fully discussed, and many cases cited. On page 289 the author says, 'But a law which deprives a party of all legal remedy must necessarily be void.' It has been repeatedly held by this Court that the Legislature cannot by a retroactive law, take away vested rights. *Baugher v. Nelson,* 9 *Gill,* 309; *Wilderman v. Mayor &c., of Balt.,* 8 *Md.* 551; *Bramble v. Twilley,* 41 *Md.* 436. The application of this rule to the case before us, depends altogether upon the nature of the legal right asserted by the plaintiff. The Code, Art. 95, fixes the legal rate of interest, and declares

that a person guilty of usury shall forfeit all the excess above the legal interest.

"The appellee contends that this is a suit to enforce the forfeiture, that the claim of the plaintiff is for the forfeiture or penalty imposed by the Code, which it was in the power of the Legislature at any time to alter or repeal."

The Court continued (*id.* at 559–560):

"But a reference to *Scott v. Leary*, 34 *Md.,* 389, will show that this doctrine has no application to the present case. That was a suit like the present, to recover money which had been paid by the plaintiff . . . in excess of the legal rate of interest. It was there held that the suit was not for the recovery of a forfeiture, that the right of action was not conferred by the Code, nor was it based upon the provisions of the Code, but existed at the common law, and grows out of the contract and the legal rights of. the parties with respect thereto. The Code, Art. 95, *sec.* 1, fixes the legal rate of interest at *six per centum per annum;* and *sec.* 4 provides that any person guilty of usury shall forfeit all excess above the principal sum and the legal interest thereon, 'which forfeiture shall ensure to the benefit of any defendant who shall plead usury and prove the same.' This is the only forfeiture declared by the Code, and the only mode of enforcing it as therein provided, is by a defendant who 'shall plead usury and prove the same.' It is clear that this is not a proceeding to enforce the forfeiture.

"The provisions of the Code have no other application to the case, except as they fix the legal rate of interest to which the lender is entitled, all in excess of that rate paid to him is money received by him in violation of law, to which he had no legal right, and which the other party is entitled to recover back in an action of *assumpsit,* as money had and received to his use.

\* \* \*

"This is the effect of the decision in *Scott v. Leary, supra,* which seems to us to be conclusive of the case. It being

clear both upon reason and authority that a claim or right of action of this kind when it has become vested, is protected by the constitutional provision, and cannot be destroyed or taken away by the Legislature by a retroactive law."

For a similar discussion of the *Baugher* case, explaining that *Baugher* was based on the holding that there was no vested right "to insist upon the forfeiture of the entire debt," *see Grove v. Todd, supra,* 41 Md. at 644. *See also Scott v. Leary,* 34 Md. 389, 395 (1871). Subsequent cases also recognize that *Baugher* supports the principle that the Legislature is constitutionally precluded from retroactively impairing vested property rights. *See, e.g., Murphy v. Wheatley,* 100 Md. 358, 366, 59 A. 704, 707 (1905); *Garrison v. Hill, supra,* 81 Md. at 556, 32 A. at 192; *O'Brian & Co. v. County Comm'rs of Balto. Co.,* 51 Md. 15, 24 (1879).

The two cases before us do not involve the type of forfeiture which, under *Baugher,* the Legislature could retroactively abrogate. Instead, they involve the type of retroactive legislation which was invalidated in the *Williar, Grove,* and other cases.

■■■■■■■ Whether Chs. 59 and 569 of the Acts of 2000 are viewed as statutes abrogating petitioners' rights to particular sums of money, or as statutes abrogating causes of action in pending cases, or as both (which is probably the most accurate description), the retrospective portions of both statutes clearly deprived petitioners of vested rights. Consequently, those portions are invalid under Article 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution.

IV.

■■■■ Although the respondents do not argue that the retrospective portions of Chs. 59 and 569 are valid "curative acts," this argument is advanced in some of the *amici curiae* briefs arguing that the retroactive provisions are constitutional. Except for issues which the Court will notice *sua sponte,* "we will not consider an issue raised by an amicus when no party to

the case raises it." *Eagle–Picher v. Balbos,* 326 Md. 179, 230–231 n. 15, 604 A.2d 445, 470 n. 15 (1992), quoting *Maryland–National Capital Park & Planning Comm'n v. Crawford,* 307 Md. 1, 15 n. 6, 511 A.2d 1079, 1086 n. 6 (1986). *See also Rivera v. Edmonds,* 347 Md. 208, 217 n. 7, 699 A.2d 1194, 1199 n. 7 (1997).

 Even if the issue were properly before us, it is clear from our cases that Chs. 59 and 569 were not "curative acts" rectifying a technical defect. Instead, they represented major changes of legislative policy. Ch. 59 created a statutory interest rate for "consumer contracts" as defined in the statute. Such statutory interest rate did not exist before, and the rate of interest was set by Article III, § 57, of the Constitution. In addition, Ch. 59 regulated in detail certain late charges where there had been no prior regulation. Ch. 569 totally changed legislative policy with regard to the subrogation rights of an HMO. Under our opinions, these were not "curative acts." *See, e.g., Vytar Associates v. City of Annapolis, supra,* 301 Md. at 572–574, 483 A.2d at 1270–1272; *Washington Nat'l Arena v. Prince George's Co., supra,* 287 Md. at 45–55, 410 A.2d at 1064–1070; *Dryfoos v. Hostetter, supra,* 268 Md. at 404–408, 302 A.2d at 32–35; *Grove v. Todd, supra,* 41 Md. at 641–644.

 Moreover, a valid "curative act" cannot "interfere[ ] with vested rights," *Dryfoos v. Hostetter, supra,* 268 Md. at 404, 302 A.2d at 32–33, and cases there cited. As previously shown, Chs. 59 and 569 clearly interfere with vested rights.

## V.

To the extent that a claimed vested right involves a traditional judicial cause of action or access to the courts, the retrospective application of a statute impairing that vested right implicates Article 19 of the Maryland Declaration of Rights. Article 19 guarantees a "remedy by the course of the Law of the land, ... according to the Law of the land," for "every [person], for any injury done to him [or her] in his [or her] person or property."

With regard to No. 71, we have earlier pointed out that the petitioners' right not to be charged interest in excess of six per cent, like the right of the consumer subscribers in *United Cable v. Burch, supra,* 354 Md. 658, 732 A.2d 887, is based directly upon Article III, § 57, of the Maryland Constitution. It is a "basic tenet, expressed in Article 19 of the Maryland Declaration of Rights, that a plaintiff injured by unconstitutional state action should have a remedy to redress the wrong." *Ashton v. Brown, supra,* 339 Md. at 105, 660 A.2d at 464–465. *See also, e.g., Ritchie v. Donnelly,* 324 Md. 344, 369–374, 597 A.2d 432, 444–447 (1991); *Clea v. City of Baltimore, supra,* 312 Md. at 680–681, 541 A.2d at 1312–1313; *Weyler v. Gibson, supra,* 110 Md. at 653–654, 73 A. at 263. The petitioners in No. 71 had a constitutional right, under Article III, § 57, to a sum of money and an accrued common law cause of action to enforce that right. The retroactive provisions of Ch. 59 constituted state action abolishing the constitutional right and the remedy to enforce it. Under the above-cited cases, such state action is precluded by Article 19.

This Court's opinions have also made it clear that Article 19 provides a measure of constitutional protection even for causes of action which are not based on constitutional rights and which may not have accrued when the challenged governmental action occurred. *See, e.g., Robinson v. Bunch, supra,* 367 Md. at 444, 788 A.2d at 644; *Doe v. Doe,* 358 Md. 113, 128, 747 A.2d 617, 624 (2000); *State v. Board of Education, supra,* 346 Md. at 647, 697 A.2d at 1341; *Renko v. McLean,* 346 Md. 464, 484, 697 A.2d 468, 478 (1997); *Johnson v. Maryland State Police, supra,* 331 Md. at 297, 628 A.2d at 168; *Murphy v. Edmonds, supra,* 325 Md. at 365, 601 A.2d at 113. "A statutory restriction upon access to the courts [in such cases] violates Article 19 . . . if the restriction is unreasonable." *Murphy,* 325 Md. at 365, 601 A.2d at 113.

If Article 19 of the Declaration of Rights provides a degree of protection for causes of action which have not accrued at the time of the challenged governmental action, it follows that the constitutional provision would provide greater

protection for a cause of action that has already accrued when the challenged governmental action occurred. Although this Court has not previously had any occasion to discuss the specific issue, courts elsewhere have held that state constitutional provisions similar to Article 19 preclude retrospective legislation abrogating accrued causes of action. *See, e.g., Resolution Trust Corp. v. Fleischer,* 257 Kan. 360, 375–376, 892 P.2d 497, 506–507 (1995) (Retroactive application of a statute impairing a tort cause of action was held to violate both the state constitution's provision similar to Article 19 as well as the state constitution's due process clause); *Perkins v. Northeastern Log Homes,* 808 S.W.2d 809 (Ky.1991) (The Supreme Court of Kentucky held that state constitutional provisions, including one similar to Article 19, precluded the application of a 1986 statute of repose to injuries occurring from 1978 until early 1986); *Reeves v. Ille Electric Company,* 170 Mont. 104, 110, 551 P.2d 647, 650 (1976) (" 'Where an injury has already occurred for which the injured person has a right of action, the Legislature cannot deny him a remedy,' " quoting *Shea v. North–Butte Mining Co.,* 55 Mont. 522, 533, 179 P. 499, 503); *Smothers v. Gresham Transfer, Inc.,* 332 Or. 83, 23 P.3d 333 (2001) (The plaintiff was tortiously injured in 1993; the legislature abolished his tort cause of action in 1995, and the court held that the 1995 statute violated the Oregon constitutional provision similar to Article 19); [14] *Gibson v. Commonwealth of Pennsylvania,* 490 Pa. 156, 160–162, 415 A.2d 80, 83–84 (1980) (In an opinion by Justice Roberts, the Court held that a constitutional provision, like Article 19, providing that persons are entitled to justice " 'by the law of the land,' " means " 'that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in substance, by any subsequent law' ").

---

**14.** The *Smothers* opinion, 332 Or. at 91–125, 23 P.3d at 338–357, contains an excellent and comprehensive discussion of the history and effect of so-called "remedy clauses" in state constitutions, including a discussion of Maryland's Article 19.

The principle applied in the above-cited cases is applicable to No. 121 and the retroactive parts of Ch. 569, as well as No. 71 and the retroactive parts of Ch. 59. We agree with those decisions and hold that the retroactive portions of both Ch. 59 and Ch. 569 violate Article 19 of the Maryland Declaration of Rights.

## VI.

The respondents in No. 71 advance an argument which can be rejected with short shrift. They rely on the general common law rule that, when one voluntarily pays money under a mistake of law, the payor may not ordinarily bring a common law action for the recovery of the money. He may sue for a return of the money only if the right to recover it is provided for by statute. In Maryland, this common law principle, often referred to as the "voluntary payment doctrine," has most often been applied where there is a mistaken payment of taxes or other government fees. *See, e.g. Bowman v. Goad,* 348 Md. 199, 202–204, 703 A.2d 144 (1997), and cases there collected.

An argument, identical to that made by the respondents in No. 71, based on the voluntary payment doctrine, was made and rejected by this Court in *Williar v. Loan Ass'n, supra,* 45 Md. at 560, where the Court stated:

> "The point made by the appellee that the money in this case having been paid voluntarily, cannot be recovered back, is answered by the decisions in *Baugher v. Nelson* and *Scott v. Leary,* in which it was held that . . . the doctrine of voluntary payment has no application to such cases."

Actions for the recovery of unlawful excess interest are well-recognized common law actions. Consequently, the general principle, that the common law does not recognize an action to recover money voluntarily paid under a mistake of law, is obviously inapplicable under circumstances where the common law specifically recognizes an action to recover excess interest which had been voluntarily paid. In addition to the *Williar, Scott,* and *Baugher* opinions, *see, e.g., Plitt v. Kauf-*

*man,* 188 Md. 606, 612, 53 A.2d 673, 676 (1947) ("At common law a person who has paid excessive interest may recover it in an action for money had and received"); *Lovett v. Calvert Co.,* 106 Md. 132, 136, 66 A. 708, 710 (1907); *Second German American Building Association v. Newman,* 50 Md. 62, 66 (1878); *Andrews v. Poe,* 30 Md. 485, 487–488 (1869). *See also Tri–County Federal Savings & Loan v. Lyle,* 280 Md. 69, 371 A.2d 424 (1977).

Moreover, if there were any merit to the respondents' voluntary payment argument, *United Cable v. Burch, supra,* 354 Md. 658, 732 A.2d 887, the case giving rise to Ch. 59 of the Acts of 2000 and to Case No. 71 now before us, could not have been decided on the merits. Instead, we would have been obligated to direct the Circuit Court to dismiss the action under the voluntary payment principle. *See Bowman v. Goad, supra,* 348 Md. 199, 703 A.2d 144.

*IN CASE NO. 71, THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS REVERSED AND THE CASE IS REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENTS.*

*IN CASE NO. 121, THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS REVERSED AND THE CASE IS REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT.*