829 A.2d 611

**ALLSTATE INSURANCE COMPANY**

**v.**

**Kyong Ho KIM, et al.**

**No. 76, Sept. Term 2002.**

Court of Appeals of Maryland.

July 31, 2003.

278

Thomas Patrick Ryan (Amy Leete Leone of McCarthy Wilson, on brief), Rockville, for Appellant.

Thomas X. Glancy, Jr. (Christine Y. Lee of Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, on brief), Baltimore, for Appellees.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

In its 2001 session, the General Assembly abolished the defense of parent-child immunity in a tort action arising from the operation of a motor vehicle, up to the minimum amount of liability insurance coverage required by Maryland Code, § 17–103(b) of the Transportation Article ($20,000 per person/$40,000 per accident). The law took effect October 1, 2001. The issue in this appeal is whether that law was intended to apply, and lawfully can apply, to an action that was filed after October 1, 2001, but that arose from an accident that occurred prior to that date. In an action for declaratory judgment filed by appellant, Allstate Insurance Company, the Circuit Court for Montgomery County declared that the law was applicable. We shall affirm.

## BACKGROUND

This Court adopted the doctrine of parent-child tort immunity in 1930. In *Schneider v. Schneider*, 160 Md. 18, 152 A. 498 (1930), we barred an action by a mother against her minor son for injuries arising from an automobile accident caused by her son's negligent driving. In doing so, as we later explained in *Warren v. Warren*, 336 Md. 618, 622, 650 A.2d 252, 254 (1994), "[w]e fashioned a broad reciprocal immunity under which parents and children could not assert *any* claim for civil redress [against each other]." We have, over time, offered various rationales for that immunity—that it preserved both the harmony and integrity of the family unit and parental authority in the parent-child relationship, that it prevented

fraud and collusion among family members to the detriment of third parties, and that it averted the threat that intra-familial litigation would deplete family resources. *See Renko v. McLean,* 346 Md. 464, 469, 697 A.2d 468, 470–71 (1997) and *Eagan v. Calhoun,* 347 Md. 72, 75, 698 A.2d 1097, 1099 (1997).

The doctrine was first enunciated in an 1891 Mississippi case, *Hewlett v. George,* 68 Miss. 703, 9 So. 885 (1891), and, for a time, gained recognition in many other States. By 1994, however, the doctrine had either been abrogated altogether or made inapplicable to motor torts in most of the States that had ever adopted it, including Mississippi. In *Warren v. Warren, supra,* 336 Md. at 627, n. 2, 650 A.2d at 257, n. 2, we noted that 43 jurisdictions then permitted suits between parents and children for motor torts, either because parent-child tort immunity had never been adopted or because it had been totally or partially abrogated.

Notwithstanding that Maryland remained increasingly isolated in its attachment to this doctrine, we steadfastly refused to abolish it and consented to only three exceptions to it. In *Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951), we held that a minor child who had suffered from cruel, inhuman, or outrageous conduct at the hands of a parent could sue that parent for money damages. In *Waltzinger v. Birsner,* 212 Md. 107, 128 A.2d 617 (1957), we held that an emancipated child could sue his parent for claims arising after the child reached majority, and, in *Hatzinicolas v. Protopapas,* 314 Md. 340, 550 A.2d 947 (1988), we allowed a child to sue the business partner of his parent for negligence committed in the operation of the partnership. We rejected several entreaties to add an additional exception for actions arising from motor torts, despite the existence of limited compulsory insurance in Maryland. *Frye v. Frye,* 305 Md. 542, 505 A.2d 826 (1986); *Warren v. Warren, supra,* 336 Md. 618, 650 A.2d 252; *Renko v. McLean, supra,* 346 Md. 464, 697 A.2d 468; *Eagan v. Calhoun, supra,* 347 Md. at 81, 698 A.2d at 1102. In *Frye* and *Warren,* we expressed the beliefs that exclusion of motor torts from the immunity doctrine would inevitably have some impact on the compulsory insurance program mandated by the

Legislature and that, if an exception of that kind was to be made, it should "be created by the General Assembly after an examination of appropriate policy considerations in light of the current statutory scheme." *Frye, supra,* 305 Md. at 567, 505 A.2d at 839; *Warren, supra,* 336 Md. at 627, 650 A.2d at 257.[1]

Our last rejection of a proposed exception for motor torts came in 1997, in *Renko.* The Legislature immediately renewed efforts to create such an exception by statute. Bills were introduced in the 1998 and 1999 sessions, each, as we shall explain, taking a somewhat different approach, but neither passed. Finally, in the 2001 session, the Legislature passed House Bill 183 (2001 Md. Laws, ch. 199). Chapter 199 added a new § 5–806 to the Courts and Judicial Proceedings Article—the subtitle dealing with immunities and prohibited actions—and made conforming amendments to § 3–904, which was part of the wrongful death law. Section 5–806(b) provides:

"The right of action by a parent or the estate of a parent against a child of the parent, or by a child or the estate of a child against a parent of the child, for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle ... may not be restricted by the doctrine of parent-child immunity or by any insurance policy provisions, up to the mandatory minimum liability coverage levels required by § 17–103(b) of the Transportation Article."

The Act took effect October 1, 2001, and declared that its provisions "shall apply to any case for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle filed on or after [that date]."

On July 13, 2001, Nathan Ji Hoo Kim, a young child, was a passenger in a motor vehicle being driven by his mother, Hyo Shin Kim. Nathan somehow managed to get out of his car seat in the back and make his way to the front of the car.

---

1. A bill to abrogate the doctrine with respect to motor vehicle torts was introduced in the 1992 session of the General Assembly (HB 165) but received an unfavorable report in the House Judiciary Committee.

Commencing an attempt to return the child to his car seat, Ms. Kim pulled to the side of the road and opened the driver's side door. She failed to put the gear lever in Park position, however, and the car began to roll forward. Nathan, unfortunately, fell out of the car while it was in motion and was injured. Kyong Ho Kim, Nathan's father, incurred medical expenses in the treatment of Nathan's injuries.

At the time of the accident, Mr. and Ms. Kim had in place a policy of motor vehicle insurance issued on February 25, 2001 by Allstate Insurance Company. The policy provided liability coverage in the amount of $50,000 per person injured. It contained an exclusion, however, for

> "[b]odily injury to any person related to an insured person by blood, marriage, or adoption and residing in that person's household, to the extent that the limits of liability for this coverage exceed the limits of liability required by the Maryland Financial Responsibility Law."

Mr. Kim made a claim on the policy, on both his and Nathan's behalf, whereupon Allstate filed this declaratory judgment action in the Circuit Court for Montgomery County to determine whether there was coverage. Allstate acknowledged that, if parent-child immunity was inapplicable to the claim, Allstate would be liable, up to the minimum liability coverage required by § 17–103(b) of the Transportation Article, due to the mother's negligence. It contended, however, that Chapter 199, abrogating the immunity in motor tort cases, violated the Equal Protection Clause of the Fourteenth Amendment and other unspecified provisions of the U.S. and Maryland Constitutions, and that, even if Constitutional, it was not intended to be applied and could not validly be applied to claims or causes of action that arose before its effective date (October 1, 2001). Retroactive application, it averred, would constitute an unlawful impairment of the obligation of contracts and would violate the due process clause of the Fourteenth Amendment and Articles 19 and 24 of the Maryland Declaration of Rights. Allstate asked the court to make declarations consistent with those arguments—in effect, to declare Chapter 199 invalid or inapplicable.

The court found no merit in Allstate's contentions. On July 1, 2002, it entered a declaratory judgment that Chapter 199 "applies retroactively to any claims filed on or after October 1, 2001, irrespective of whether the cause of action giving rise to such claims arose prior to or after that date" and that the statute was "constitutional in all respects." Allstate appealed, and we granted *certiorari* prior to any proceedings in the Court of Special Appeals to consider (1) whether the Legislature intended for Chapter 199 to apply to claims filed on or after October 1, 2001, regardless of when the cause of action arose; (2) if so, whether, as to Allstate, such application violates the due process and "taking" provisions of the Federal and State Constitutions or constitutes an unlawful impairment of contract; and (3) whether abolition of parent-child immunity only for motor torts violates the Equal Protection Clause of the Fourteenth Amendment. We shall affirm the judgment entered below.

## DISCUSSION

### Equal Protection

Chapter 199 abrogates parent-child immunity only with respect to tort claims arising from automobile accidents and, as to those claims, only up to the minimum amount of insurance required by State law ($20,000 per person injured up to a maximum of $40,000 per accident). Allstate contends that there is no rational basis for distinguishing those kinds of claims from other tort claims and that, as a result, the partial abrogation violates the Equal Protection Clause of the Fourteenth Amendment. For that proposition, Allstate relies entirely on a 1980 South Carolina case, *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980), which we find unpersuasive and decline to follow.

*Elam* presented two issues—whether a South Carolina statute that, like Chapter 199, abrogated parent-child immunity only in motor tort cases violated equal protection guarantees in the Federal and South Carolina Constitutions and whether the court, by judicial decision, should abrogate the common

law immunity in its entirety. In holding that the statute violated equal protection guarantees, the court relied on an earlier case, *Marley v. Kirby,* 271 S.C. 122, 245 S.E.2d 604 (1978), in which it had declared a comparative negligence statute in violation of equal protection because it applied only to motor vehicle accidents. The entire analysis in *Elam* was embodied in the single statement: "There is no rational justification for singling out persons injured in automobile accidents for purposes of comparative negligence; similarly, there is no valid reason to treat unemancipated minors injured in automobile accidents differently from their peers tortiously injured in other ways." *Id.* at 110. The court then went on to abolish the doctrine in its entirety as a matter of common law, thereby making its conclusion regarding the statute of little or no import.

To the best of our knowledge, the South Carolina court stands alone in its equal protection conclusion. The North Carolina court found no equal protection problem with a similar statute, noting that the motor vehicle problem in the State was such that the Legislature "should be free to attack the evils brought about by accidents on the highways without addressing the whole field of negligence actions." *Ledwell v. Berry,* 39 N.C.App. 224, 249 S.E.2d 862, 864 (N.C.Ct.App. 1978), *rev. denied,* 296 N.C. 585, 254 S.E.2d 35 (1979). As we observed in *Warren v. Warren, supra,* 336 Md. at 627, n. 2, 650 A.2d at 257, n. 2, many States, by statute or by judicial decision, have abrogated parent-child immunity in motor tort cases, either entirely or to the extent that liability is covered by insurance. In *Fields v. Southern Farm Bureau Casualty Ins. Co.,* 350 Ark. 75, 87 S.W.3d 224, 229 (2002), the Arkansas court noted that 21 States had partially abrogated the doctrine in that manner, most of them by judicial decision. Those courts obviously perceived no equal protection problem with their partial abrogation.

Allstate agrees that the classification it attacks is to be judged under the "rational basis" standard. Under that test, a statutory classification "enjoys a strong presumption of

constitutionality and will be invalidated only if the classification is clearly arbitrary." *Murphy v. Edmonds*, 325 Md. 342, 356, 601 A.2d 102, 108 (1992). Generally, a court will not overturn a legislative classification under a rational basis standard 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [governmental] actions were irrational.' *Id.*, at 355, 601 A.2d at 108, quoting from *Gregory v. Ashcroft*, 501 U.S. 452, 471, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410, 430 (1991), quoting, in turn, *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171, 176 (1979). *See also Waters v. Montgomery County*, 337 Md. 15, 33–34, 650 A.2d 712, 720–21 (1994). As most recently stated by the Supreme Court:

> "[T]he Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational."

*Fitzgerald v. Racing Ass'n*, (No. 02–695, 2003), ── U.S. ──, 123 S.Ct. 2156, 2159, 156 L.Ed.2d 97 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11–12, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1, 13 (1992) (citations omitted)).

In *Warren v. Warren, supra*, 336 Md. at 627–28, 650 A.2d at 257, we signaled our belief that it would not be irrational or arbitrary for the Legislature to abrogate parent-child immunity in motor tort cases, noting that such an exception could "be created by the General Assembly after an examination of appropriate policy considerations in light of the current statutory scheme." There are a number of social and economic realities which make the limited abrogation under Chapter 199 entirely rational. Automobile accidents are common, and they can cause serious injuries which, if not at least partially compensable, can truly deplete family resources and lead to the very family disharmony and disruption that the immunity doctrine was designed to prevent. Indeed, we expect that

automobile accidents are a prime source of injuries suffered by a parent or a child due to the negligence of the other. Providing some measure of redress for such injuries, while at the same time preserving parent-child immunity in other contexts, is an entirely reasonable policy for the Legislature to adopt.

In inviting a legislative response, we certainly had in mind that, due to the compulsory insurance law in Maryland, there is ordinarily some insurance or other coverage in most motor tort cases-liability insurance protecting the tortfeasor, uninsured motorist coverage protecting the victim, or a claim against the Maryland Automobile Insurance Fund. Because the abrogation under Chapter 199 is limited to the amount of mandatory insurance coverage, there is little likelihood that it will result in any depletion or dislocation of family resources. *See Glaskox By and Through Denton v. Glaskox,* 614 So.2d 906, 911–12 (Miss.1992):

> "In the area of automobile accident cases, the almost universal existence of liability insurance cannot be ignored. Where liability insurance exists, the domestic tranquility argument is no longer valid; in fact it is quite hollow, for in reality the sought after litigation is between the child and the parent's insurance carrier; not the child [and] the parent ... Quite to the contrary of the fears of the defendants. where insurance is available to compensate the child for injuries, the possibility of disruption of the family unit is negligible."

*See also Smith v. Kauffman,* 212 Va. 181, 183 S.E.2d 190, 194 (1971).

In that limited context, abrogation serves more to eliminate than to create a classification: it removes a bar to redress that was applicable only to parents and unemancipated minor children and treats them like all other victims of automobile negligence. As the chief sponsor, Delegate Vallario, pointed out in testimony on the bill, if two children, one 18 and one 17, are injured due to the negligent driving of their parent, the 18–year–old child could seek legal redress but not his/her

brother or sister. We find no violation of equal protection in Chapter 199.

### Retroactive Application

We have, over the years, stated a number of rules regarding the application of statutes to events that occurred prior to their effective date, and, although we have generally applied those rules consistently, we have not always been consistent in articulating them. In *WSSC v. Riverdale Heights Fire Co.*, 308 Md. 556, 563–64, 520 A.2d 1319, 1323 (1987), we confirmed four basic principles of Maryland law: (1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws. We have restated several of those principles in subsequent cases, and they remain the framework for analysis.

When an issue is raised regarding whether a statute may be given retroactive effect, we engage in a two-part analysis. First, we must determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted. That implicates the first and third principles. Applying the presumption of prospectivity, a statute will be found to operate retroactively only when the Legislature "clearly expresses an intent that the statute apply retroactively." *Waters v. Montgomery County, supra*, 337 Md. at 28, 650 A.2d at 718. The issue of intent sometimes becomes clouded when, as here, a statute can be regarded as being prospective in one sense and retroactive in another. As noted in *State Comm'n on Human Rel. v. Amecom Div.*, 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976), "a statute, though applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, when applied so as to determine the legal significance of acts or events that occurred prior to its

effective date, applied retroactively." Context becomes important.

If we conclude that the Legislature *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition. That implicates the second and fourth principles. As we pointed out recently in *Dua v. Comcast Cable,* 370 Md. 604, 805 A.2d 1061 (2002), that analysis must take into account both Federal and Maryland provisions, as to which the standards differ.

## Legislative Intent

■■ In determining legislative intent, we begin with the plain meaning of the statutory language. If the intent is clear from that language, there is no need to search further. If the intent for which we search cannot be gleaned from the statutory language alone, we may, and often must, look for evidence of intent from legislative history or other sources. *See Medex v. McCabe,* 372 Md. 28, 38, 811 A.2d 297, 303 (2002); *MVA v. Lytle,* 374 Md. 37, 57, 821 A.2d 62, 73–74 (2003).

As we indicated, the Legislature attempted to state its intent in Chapter 199. Section 2 provided that the Act shall apply to "*any case* for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle *filed* on or after [October 1, 2001]." (Emphasis added). In one sense, as observed in *State Comm'n on Human Rel. v. Amecom Div., supra,* 278 Md. at 123, 360 A.2d at 3–4, that constitutes a purely prospective intent: the Act, which eliminated an existing defense, would apply only to cases filed in court after its effective date. In its Bill Analysis, the House Judiciary Committee noted that HB 183 "applies *prospectively* to any case for wrongful death, personal injury or property damage arising out of the operation of a motor vehicle filed on or after October 1, 2001." (Emphasis added).

Allstate, understandably, focuses not just on the prospective context of when the case was filed but on the fact that some cases filed after October 1, 2001, like this one, involve causes

of action arising before that date, to which, at the time the action arose, a defense of parent-child immunity existed. It posits that, because there is no clear expression in the statute that it was intended to apply to cases of that kind—the only category that raises the specter of retroactive application—it must be presumed that the statute was *not* intended to apply to them. Allstate finds support for that presumption in the use of the word "prospectively" in the House Judiciary Committee Bill Analysis, which Allstate contends constitutes an affirmative expression of intent that the Act not apply to such claims.

 Allstate's argument finds no support in logic, in the words of the statute, or in the legislative history. Although an intent to have a statute operate retroactively must be clearly expressed to be given effect, there is no mandated form for its articulation, and the expression may be found by necessary implication. In declaring, without limitation, that the Act would apply to "any case" filed on or after its effective date, the Legislature must have recognized that cases filed on that date, or even within the applicable period of limitations thereafter, may, and in some instances necessarily must, have arisen from automobile accidents that occurred before October 1, 2001. Having stated that the Act was to apply to "any case" filed after October 1, 2001, the Legislature was not required to engage in the redundancy of stating that, by "any case," it meant "every case." To the extent that use of the filing date of the action as the criterion results in a retroactive application of the statute, therefore, it is clearly one that the Legislature must have intended. *See Jenkins v. County of Los Angeles,* 74 Cal.App.4th 524, 536, 88 Cal.Rptr.2d 149 (Cal.Ct.App.1999). That conclusion, drawn as a necessary inference from the statutory language itself, is supported, as well, by the legislative history.

Our most recent rejection of any further change in the parent-child immunity doctrine came in 1997 with *Renko v. McLean, supra,* 346 Md. 464, 697 A.2d 468, and *Eagan v. Calhoun, supra,* 347 Md. 72, 698 A.2d 1097. The legislative

response commenced in the very next (1998) session with House Bill 488 which, like Chapter 199, would have eliminated parent-child immunity as a defense in an action for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle. In its first reader form, HB 488 stated an effective date of October 1, 1998, but said nothing about prospective or retroactive effect. Delegate Vallario proposed a number of amendments to the bill, one of which added a provision declaring that the Act was to be prospective only "and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act." House Bill 488 died in the House Judiciary Committee.

In the next (1999) session, Delegates Dembrow and Vallario sponsored HB 583, which also would have abolished the doctrine in motor tort cases, but in somewhat different language. The bill would have taken effect October 1, 1999 and applied "to any case for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle filed on or after" that date. Facing the prospect of another unfavorable report by the House Judiciary Committee, the sponsors withdrew House Bill 583.

House Bill 183 (2001), which became Chapter 199, picked up the 1999 approach of HB 583 and used the filing date as the criterion, rather than the 1998 approach of HB 488, which, with Delegate Vallario's amendment, used the criterion of when the cause of action arose. The Legislature and, in particular, the House Judiciary Committee, thus had before it two different approaches—one that would have made the abrogation entirely prospective by having it apply only to causes of action arising after its effective date and one that, though prospective in terms of when the case was filed, swept in causes of action that arose prior to the effective date—and it opted for the latter. That choice, given the legislative history, was clearly a knowing and deliberate one.[2]

---

2. The approach of limiting the application of an Act that affects tort immunities to causes of action arising on or after its effective date, in

## Validity of Retroactive Application

 Allstate mounts a multi-faceted Constitutional attack on any retroactive application of Chapter 199. Such an application, it urges, would violate the due process and "taking" provisions of the Maryland Constitution (Article 24 of the Md. Declaration of Rights and Art. III, § 40 of the Md. Constitution), the due process clause of the Fourteenth Amendment to the U.S. Constitution, and the impairment of contract clause of the U.S. Constitution (Article I, § 10).

We dealt with some of these issues most recently in *Dua v. Comcast Cable, supra,* 370 Md. 604, 805 A.2d 1061. We made clear in *Dua* that, although Article 24 and Article III, § 40 are counterparts, respectively, to the due process clause of the Fourteenth Amendment and the "takings" clause of the Fifth Amendment, we have applied a different standard in judging the validity of a retroactive statute under the Maryland provisions than the Supreme Court has applied in examining retroactive statutes under the Federal provisions. The standard with respect to the Federal provisions—both due process and "taking" is whether the legislative Act was arbitrary or irrational. The test with respect to the Maryland provisions—Article 24 and Article III, § 40, is whether retroactive effect would impair vested rights. Unless, as in *Dua,* the statute clearly fails one of those tests, both must be considered.

In dealing with the retroactive effect of statutes challenged under the Federal due process and "taking" provisions, the Supreme Court has, on the whole, given considerable leeway

the mode of HB 488 with the Valario amendment, is not unusual and thus was well-known to the Legislature. *See,* for example, 1994 Md. Laws, chs. 268, 530, and 576, amending the law relating to the tort immunity of certain non-profit organizations; 1999 Md. Laws, chs. 177 and 637, amending the law relating to local government tort immunity; 1994 Md. Laws. ch. 576, amending the law relating to immunity of community recreation program volunteers; 1995 Md. Laws, ch. 437 and 1999 Md. Laws, ch. 639, amending the law relating to the State's sovereign immunity; 1994 Md. Laws, ch. 477, amending the law relating to the "cap" on non-economic damages in personal injury actions.

to legislative bodies, at least with respect to economic legislation. In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752, 766 (1976), *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.* 467 U.S. 717, 729–30, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601, 610–11 (1984), *Connolly v. Pension Benefit Guaranty Corporation*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166. 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), and *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), the Court adopted the view, with respect to both due process and regulatory "taking" challenges that (1) statutes adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, (2) the burden is on one complaining of a due process violation to establish that the legislature has acted in an "arbitrary and irrational way" (*Usery, supra*, 428 U.S. at 15, 96 S.Ct. at 2892, 49 L.Ed.2d at 766), (3) statutes readjusting rights and burdens are not unlawful solely because they upset otherwise settled expectations, and (4) legislatures may impose retroactive liability to some degree, but a statute may be unconstitutional if it imposes "severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 528–529, 118 S.Ct. 2131, 2149, 141 L.Ed.2d 451, 474 (1998) (plurality Opinion by O'Connor, J.).

The ultimate test, both generally and with respect to legislation pertaining to State tort law, is whether the legislative decision being challenged is "arbitrary and irrational." In *Martinez v. California*, 444 U.S. 277, 282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481, 487 (1980), the Court concluded that "the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *See also Logan*

*v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265, 276 (1982).

In our discussion of the equal protection issue, we concluded that it was not unreasonable, and therefore not irrational, for the Legislature, as a matter of substantive tort law, to abrogate parent-child immunity in motor tort cases up to the amount of compulsory insurance. Notwithstanding its more frequent choice to exclude application of a statute affecting immunities to causes of action arising prior to the effective date of the statute (*see ante,* n. 2), we see nothing arbitrary or irrational about the Legislature's use of a prospective filing date as the criterion of applicability for the abrogation. It is evident that the Legislature perceived a great unfairness in continuing to deny a class of minor children a right of redress for injuries suffered as a result of their parent's negligent driving that everyone else had, including emancipated, adult, and step-siblings. With knowledge that the insurance industry, having appeared at hearings on the 1998 and 1999 bills to abrogate immunity in motor tort cases, was well aware of legislative efforts in that regard, the Legislature no doubt concluded that enactment of such a measure would come as no shock to insurers.

The evidence regarding any actual impact on the insurance industry of a retroactive application of Chapter 199 ranges from non-existent to meager. Although Allstate alleged in its complaint that retroactive application would affect claims involving "a large number of minors," no evidence was presented as to the expected number of additional claims or the potential expense of them. A fiscal note prepared by the Department of Legislative Services indicated that the Maryland Automobile Insurance Fund, one of the major motor vehicle insurers in the State, with 135,000 policies outstanding in 2001, "approximately six cases involving insureds would arise annually as a result of this bill" and that, "if each case were settled for the maximum amount of $20,000, the total cost would be $120,000 per year." There was no indication of what, if any, portion of that expenditure would be due to

applying the law retroactively to causes of action arising prior to October 1, 2001.

Given the rational desire by the Legislature to end the denial of redress to parents and minor children and the extreme paucity of evidence that the retroactive application would create any significant burden to Allstate or anyone else, we cannot conclude that such application is irrational or arbitrary and therefore find no violation of Federal due process or the Federal prohibition against the taking of property without just compensation.

As *Dua* makes clear, the standard for determining whether retroactive legislation violates Art. 24 of the Maryland Declaration of Rights or Art. III, § 40 of the Maryland Constitution is whether it abrogates or significantly impairs "vested rights." Although we have not enunciated any single all-encompassing definition of that term, we have held that it includes "that which is regarded as a property right under Maryland property law." *Dua, supra,* 370 Md. at 631, 805 A.2d at 1077. With respect to causes of action, we confirmed in *Dua* that "the Maryland Constitution ordinarily precludes the Legislature (1) from retroactively abolishing an accrued cause of action, thereby depriving the plaintiff of a vested right, and (2) from retroactively creating a cause of action, or reviving a barred cause of action, thereby violating the vested right of the defendant." *Id.,* at 633, 805 A.2d at 1078.

At issue here, at least in the broadest sense, is the latter principle—whether by applying the abrogation of parent-child immunity to negligent conduct that occurred prior to October 1, 2001, the Legislature has, in effect, retroactively created a cause of action and thereby violated a vested right of Allstate. In *WSSC v. Riverdale Heights Fire Co., supra,* 308 Md. 556, 560, 520 A.2d 1319, 1321, we held that the *granting* of immunity effects more than "mere change of practice, procedure, or remedy" and instead "establishes a rule of substantive law," thus intimating that a statute conferring such immunity retroactively might transgress a vested right. We have not, however, considered whether the retroactive abrogation of an

existing immunity would have a similar effect.[3]

Mr. Kim urges that there is an important distinction between statutes that retroactively abrogate the right to pursue an accrued cause of action and those that retroactively curtail or eliminate a possible defense to a cause of action. The right to pursue a cause of action, he notes, vests when the cause of action arises—when the operative events upon which the action is based occur. The right to assert a defense, on the other hand, does not arise and therefore cannot vest until the action is filed. For that proposition, he cites a number of out-of-State cases in which legislation was approved that retroactively eliminated the defense of contributory negligence, extended a statute of limitations, or applied the defense of sovereign immunity. *See Hall v. A.N.R. Freight Syst., Inc.,* 149 Ariz. 130, 717 P.2d 434 (1986), and *Godfrey v. State,* 84 Wash.2d 959, 530 P.2d 630, 632 (1975) (retroactive abrogation of defense of contributory negligence); *D.J.L. v. Armour Pharmaceutical Co.,* 307 N.J.Super. 61, 704 A.2d 104 (Law Div.1997) (extension of statute of limitations); and *Mispagel v. Highway and Transp. Comm'n,* 785 S.W.2d 279 (Mo.1990) (retroactive application of sovereign immunity).

The theory underlying those decisions was well articulated by the Arizona Supreme Court in *Hall* and the Washington Supreme Court in *Godfrey.* Citing an earlier decision (*Steinfeld v. Nielsen,* 15 Ariz.424, 139 P.879 (1913)), that defined a right that was vested by comparing it to a right that was either expectant or contingent, the *Hall* court concluded that a right vests "only when it is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." *Hall,* 717 P.2d at 444. A defense—contributory negligence in that case—"while a substantive right, does not vest until a lawsuit has been filed. Prior to that time it is merely an inchoate right which cannot be asserted 'until the happening of some

---

**3.** Because we found that the statute in question did not operate retroactively, we did not have to decide the Constitutional issue.

future event.'" *Id.,* quoting in part from *Steinfeld v. Nielsen,* 139 P. at 896.

The *Godfrey* court said basically the same thing. Beginning with the proposition that a person does not have an inherent vested right in the continuation of an existing law, the court concluded:

> "A vested right, entitled to protection from legislation, must be something more than a *mere expectation* based upon an anticipated continuance of the existing law; *it must have become a title,* legal or equitable, *to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.*"

*Godfrey,* 530 P.2d at 632 (Emphasis in original).

That principle, Mr. Kim avers, applies as well to the abrogation of the defense of parent-child immunity. It is, in his view, an inchoate defense that cannot be asserted until an action in which it might be applicable has been filed and therefore cannot be regarded as a vested right before that time.

We need not consider here whether we would adopt the actual holdings in *Hall* or *Godfrey,* should the General Assembly attempt, retroactively, to abolish the defense of contributory negligence; nor need we determine their applicability to Ms. Kim, who would be able to waive the immunity even if she had it. We are persuaded that the theory asserted in those cases, and others, is applicable to the ability of Allstate to assert the defense of parent-child immunity, however. Immunities are not favored in the law, and this one, in particular, has been under challenge, in both this Court and the Legislature, for several years.

We find no violation of any vested right enjoyed by Allstate by a retroactive application of Chapter 199.

### Impairment of Contract

Article I, § 10 of the U.S. Constitution provides that no State shall pass any law impairing the obligation of contracts. Although the clause is seemingly absolute in its language, the Supreme Court has made clear that "its prohibi-

tion must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.' " *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983), quoting from *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 434, 54 S.Ct. 231, 239, 78 L.Ed. 413, 426–27 (1934). *See also Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727, 734 (1978):

> "[T]he Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' "

In determining whether an enactment violates the clause, a court engages in a three part inquiry: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328, 337 (1992). *See also East Prince Frederick Corp. v. Board of County Com'rs,* 320 Md. 178, 183, 577 A.2d 27, 30 (1990).

Allstate's complaint is based on its contractual obligation to pay all damages Ms. Kim is legally obligated to pay because of bodily injury arising out of the ownership, maintenance, or use of the insured automobile. When the policy was issued and when the accident occurred, Ms. Kim enjoyed immunity from suit by her son, and, because she had no legal obligation to pay damages resulting from her son's injuries, Allstate had no contractual obligation to do so. Retroactive removal of Ms.

Kim's immunity, says Allstate, created a contractual obligation on its part where none existed before. That, it contends, substantially changed its rights under the insurance contract.

Assuming that there is a contractual relation that has been changed, the issue becomes the extent of the impairment. In order to run afoul of Article I, § 10, the impairment must be "substantial," *Allied Structural Steel Co. v. Spannaus, supra,* 438 U.S. at 244, 98 S.Ct. at 2722, 57 L.Ed.2d at 737, and "[t]he severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected." *Energy Reserves Group, Inc. v. Kansas Power & Light Co., supra,* 459 U.S. at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580. In gauging the extent of the impairment, the court considers "whether the industry the complaining party has entered has been regulated in the past." *Id. See also Automobile Trade Ass'n v. Ins. Comm'r,* 292 Md. 15, 30–31, 437 A.2d 199, 206–07 (1981).

Applying these principles to the reality of the change, it is clear that there has been no substantial impairment. For one thing, the contract at issue is an insurance policy which, like the industry as a whole, is subject to extensive regulation by the State. *See Automobile Trade Ass'n,* 292 Md. at 31, 437 A.2d at 207. The change, which has been "in the wind" for some period of time, concerns a principle of State tort law, a field that is also subject to extensive State regulation. We have noted the lack of evidence demonstrating any significant economic impact of the change on Allstate or any other insurer. Giving Chapter 199 the limited retroactive effect intended by the Legislature presents no Constitutional violation.

JUDGMENT AFFIRMED, WITH COSTS.

Dissenting opinion by RAKER, J., joined by CATHELL, J.

RAKER, Judge, dissenting, joined by CATHELL, J.

I respectfully dissent. I would reverse the judgment of the Circuit Court for Montgomery County and hold that abrogat-

ing the doctrine of parent-child immunity in this case impairs the obligation of contracts under the United States Constitution because, under the circumstances presented herein, the impairment is substantial.

Article I, § 10 of the United States Constitution provides, in part, that "No State shall ... pass any ... Law impairing the Obligation of Contracts." When Allstate and the insureds entered into an insurance contract, Maryland law prohibited an unemancipated minor from suing a parent for negligence. The insurance contract, and *the premiums paid* therefore, presumed that this immunity was in effect, and the premiums reflected the risk to Allstate based on that immunity. Negligence claims between parents and minor children were not a contemplated risk under the policy when it was issued. Allstate, therefore, would not have set aside reserves to cover such claims. The retroactive application of statutory abrogation of parent-child immunity will permit causes of action to be filed by children against their parents for negligence for the preceding twenty-one years-from the time the children reach age eighteen plus three years for the statute of limitations to run-as well as suits by parents against children for at least three years. Such exposure can hardly be termed unsubstantial. *See* Maryland Code (1974, 2002 Repl.Vol.) § 5-201 of the Courts and Judicial Proceedings Article. Moreover, allowing such suits would permit suits where the evidence may be scant, misplaced, or never collected because the insurance carrier relied on the defense of parent-child immunity. Allstate was justified in relying on the defense of immunity.

I would find that the impairment of this insurance contract is substantial and that retroactive abrogation of parent-child immunity is not reasonable and necessary to address an important social problem. I would hold that the statutory abrogation of parent-child immunity applies prospectively to those injuries caused by negligence that occurred on or after the statute's effective date.[1] Accordingly, I would reverse.

---

1. Numerous states, when abrogating parent-child immunity in whole or part, apply the new rule prospectively. *See, e.g., Fields v. Southern*

Judge CATHELL has authorized me to state that he joins in this dissenting opinion.

*Farm Bureau Cas. Ins. Co.,* 350 Ark. 75, 87 S.W.3d 224, 231–32 (2002); *Rigdon v. Rigdon,* 465 S.W.2d 921, 923 (Ky.1971); *Black v. Solmitz,* 409 A.2d 634, 640 (Me.1979); *Am. Family Ins. Co. v. Ryan,* 330 N.W.2d 113, 115 (Minn.1983); *Vickers v. Vickers,* 109 N.H. 69, 242 A.2d 57, 58 (1968); *Schwartz v. U.S. Rubber Corp.,* 112 N.J.Super. 595, 272 A.2d 310, 313–14 (Law Div.1971), *aff'd,* 118 N.J.Super. 128, 286 A.2d 724 (App.Div.1972); *Hyder v. Jones,* 271 S.C. 85, 245 S.E.2d 123, 124–25 (1978); *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193, 199 (1963).