76 A.3d 492

### ALLSTATE MORTGAGE & COMPANY

v.

### MAYOR & CITY COUNCIL OF BALTIMORE CITY.

**No. 524, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 25, 2013.

Brian J. Frank, Cockeysville, MD, for Appellant.

Mary F. Keenan, William R. Phelan, Jr. (George A. Nilson, City Solicitor, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, BERGER and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

BERGER, J.

This case arises from a tax sale foreclosure in the Circuit Court for Baltimore City. On October 7, 2011, appellant, Barbara Frank, t/a Allstate Mortgage & Company ("appellant"), filed a "Petition for Proper Payment of Surplus Proceeds and Statement of Claim" regarding real property known as 2335–2355 West Franklin Street ("the Property"). On March 5, 2012, the trial court held a hearing on appellant's petition. Following an initial hearing, the court ordered several witnesses subpoenaed for a later hearing on the matter. The second hearing was held on May 2, 2012. Thereafter, the court denied appellant's petition.

Appellant filed a timely appeal and presents one issue for our review, which we rephrase as follows:

Whether the circuit court erred in denying appellant's petition for proper payment of surplus proceeds and statement of claim.[1]

For reasons discussed below, we affirm the judgment of the Circuit Court for Baltimore City.

## FACTS AND PROCEEDINGS

By a deed dated July 25, 1997, Opportunity Plus Investment Company, LLLP ("Opportunity Plus")[2] acquired the Property in Baltimore City for the purchase price of $150,000.00. The purchase of the Property was financed, in part, by a loan from the sellers in the amount of $123,490.58 secured by a mortgage on the Property that was executed by "Opportunity Plus Investment Company, LLLP / By: Darryl M. Coleman, General Partner." By an assignment of mortgage dated November 27, 2007, the mortgage on the Property was purchased by Allstate Mortgage & Company ("Allstate Mortgage")—a proprietorship solely owned by Barbara Frank ("Frank").

On or about May 18, 2009, following a tax sale of the Property, Baltimore City issued a tax sale certificate to ETS Maryland, LLC ("ETS Maryland"). On February 16, 2010, ETS Maryland filed a complaint to foreclose rights of redemption on the Property, naming Opportunity Plus, the Property's record title owner, as the defendant. Appellant was named a co-defendant, which at the time, held a mortgage secured by the Property. Thereafter, the tax sale certificate was pur-

---

1. Appellant phrases the question for review, which we repeat *verbatim*, as follows:

 Whether the Circuit Court erred in determining that the Mayor and City Council of Baltimore properly paid the tax sale balance proceeds to Darryl Coleman individually—a person that was neither in title to the foreclosed Property nor a party to the tax sale foreclosure action—when he was not the "person entitled to the balance" pursuant to Tax–Property § 14–818(a)(4) and the City did not exercise ordinary care nor comply with its own procedures?

2. Opportunity Plus was approved and received for record as a limited liability limited partnership on February 24, 1997, by the filing of a Certificate of Limited Partnership signed by Darryl M. Coleman ("Coleman") as its General Partner.

chased by 2335 Franklin, LLC ("2335 Franklin")—the sole member of which was Frank. On September 2, 2010, 2335 Franklin was substituted as the plaintiff in the action.

On February 2, 2011, the circuit court issued a judgment foreclosing the right of redemption in favor of 2335 Franklin. As a result, Baltimore City conveyed the Property to 2335 Franklin by deed dated April 15, 2011, which was recorded on June 1, 2011. On June 6, 2011, Asset Recovery Advisors, LLC ("Asset Recovery"),[3] acting on behalf of Coleman, filed a claim with Baltimore City's Finance Department for payment as the "person entitled" under Md.Code (2011), § 14–818(a)(4) of the Tax–Property Article ("TP") to the "balance over the amount required for the payment of taxes, interest, penalties, and costs of sale." On June 13, 2011, the Baltimore City Finance Department paid the surplus amount of $72,112.80 by check payable to "Darryl Coleman/Asset Recovery."

On October 7, 2011, appellant filed a petition for proper payment of surplus proceeds and statement of claim. In denying appellant's petition, the court explained:

> We have a mortgag[ee] who says they should have gotten some money from the surplus of the tax sale. We have the City that already paid out the money to whom they believed based upon information given to them was the proper person.

> \* \* \*

> Mr. Coleman, for all the City knew in the information they had, especially since he's the only person—I looked at that State tax thing, he's the only person listed. He's the resident agent. There are no other people listed for this Opportunity Plus Investment Company. So that's who the City knew, based on a document that the State, was an authorized person for Opportunity Plus Investment Company, LLLP, which was in forfeit status for not just 60 days, 90 days or a year, but for like almost eight years when this

---

**3.** Asset Recovery is a company that seeks to recover tax sale surplus proceeds on behalf of persons that are entitled to the tax bid balance.

happened. So no one is supposed to guess, and that shouldn't be what any clerk should have to do, "Oh, maybe this company has a new president" or "Maybe somebody is there," that's just too much guesswork. They're forfeited. He's listed a resident agent. He's come in. They're entitled. Asset Recovery is the company that has found this, and the City cut the check.

Whether or not Mr. Coleman acted in good faith, and that's why fraud was mentioned, or gave misinformation is not the determining factor here, but what the City had in front of it, whether or not—it's like other administrative agencies. Did it follow whatever policies and procedures it had?

\* \* \*

They've had to find somebody to give the surplus to, and they have someone listed on a State record as the resident agent who can accept the check along with Asset Recovery.

The mortgag[ee] has a right to make a claim after the fact in other ways, but this is not the proper forum at this point for the mortgagor to step up and say "Oh, you owe me money." Well, guess what? Opportunity Plus Investment Company, whatever its status is, doesn't foreclose it from being sued or the people that were partner or that are a part of it from being sued by the mortgage because they didn't pay.

So in that case, the petition for proper payment of surplus proceeds is denied. And the proceeds will remain. I'm not putting them back into Court. You have other avenues of collecting the money, Mr. Frank. I'm sure you're capable of doing that.

This timely appeal followed.

## DISCUSSION

The material first-level facts are not in dispute. The issue decided by the circuit court, and pursued by appellant on appeal, is purely legal. Accordingly, we shall conduct a *de novo* review. *Strub v. C & M Builders, LLC*, 193 Md.App. 1,

10, 996 A.2d 399 (2010), *rev'd,* 420 Md. 268, 22 A.3d 867 (2011) (quoting *Hall v. Univ. of Md. Med. Sys. Corp.,* 398 Md. 67, 82, 919 A.2d 1177 (2007)).

Appellant contends that the circuit court erred in denying its petition for proper payment of surplus proceeds from the tax sale foreclosure of the Property. Specifically, appellant argues that Coleman was not the "person entitled to the balance," and therefore, appellee, Mayor & City Council of Baltimore City ("appellee"), failed to adhere to TP § 14–818(a)(4), as well as its own internal procedures for issuing surplus proceeds. Conversely, appellee maintains that it fully complied with the requirements of TP § 14–818(a)(4) and with its own procedures and protocols adopted to implement TP § 14–818(a)(4). We agree with appellee.

"It is well settled that the interpretation of a statute is a judicial function and requires us to determine and effectuate the legislature's intent." *Heartwood 88, Inc. v. Montgomery Cnty.,* 156 Md.App. 333, 358, 846 A.2d 1096 (2004) (citations omitted). "We give the words of a statute their ordinary and usual meaning. If the statute is not ambiguous, we generally will not look beyond its language to determine legislative intent. When a term or provision is ambiguous, however, we consider the language 'in light of the ... objectives and purpose of the enactment.'" *Id.* at 359, 846 A.2d 1096 (citations omitted). If we cannot discern the legislature's intent from "the statutory language alone, we may ... look for evidence of intent from legislative history or other sources." *Allstate Ins. Co. v. Kim,* 376 Md. 276, 290, 829 A.2d 611 (2003). Moreover, we may consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.'" *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.,* 358 Md. 129, 135, 747 A.2d 625 (2000).

### A. Plain Language of TP § 14–818(a)(4)

The specific provision governing the distribution of surplus proceeds stemming from a tax sale foreclosure is contained in

TP § 14–818(a)(4). In its entirety, TP § 14–818(a)(4) reads as follows:

(4) Any balance over the amount required for the payment of taxes, interest, penalties, and costs of sale shall be paid by the collector to:

(i) the person entitled to the balance; or

(ii) when there is a dispute regarding payment of the balance, a court of competent jurisdiction pending a court order to determine the proper distribution of the balance.

Appellant suggests that TP § 14–818(a)(4) requires the collector—in this instance, appellee—to pay over the surplus balance to the entitled person when there is no doubt as to who is entitled to the surplus. Appellant further argues that the distribution of such proceeds "requires some level of diligence on the part of the City, particularly a review of the underlying tax sale matter to see if some other party to that action, other than the party asserting a claim to the Surplus Proceeds, may have a right to the proceeds."

Alternatively, appellee claims that appellant "stretches the provision [when there is a dispute] to somehow require the City, even in the *absence* of any known or suspected 'dispute,' to exhaustively investigate the *bona fides* of every claimant and, further, to undertake full-blown title and business records searches to assess whether there *might be* any other *potential* claimants as well."

### B. Legislative History, Purpose, and Scope of TP § 14–818(a)(4)

#### 1. Statutory Antecedents

The precursor to TP § 14–818, as it relates to the payment of surplus proceeds, appeared in 1943, as the last sentence of then Article 81, § 82 (1939, 1947 Supp.). As enacted by Chapter 761, Acts of 1943, that sentence provided that:

Upon receipt of [the full purchase price], ... the Collector shall execute and deliver a proper deed to the purchaser and shall hold any balance over and above the amount

required for the payment of taxes, penalties, and costs of sale, for the use of the person entitled thereto.

This language subsequently appeared in Article 81, § 80 (1951) and, for the last time, in Article 81, § 81(a) (1957, 1980 Repl. Vol.). It was not until 1981 that the section was amended to introduce the alternative provision that now appears in TP § 14–818(a)(4)(ii) ("or ... when there is a dispute ..., [to] a court of competent jurisdiction...."). Chapter 258 (S.B. 104), Acts of 1981.

The Title to Senate Bill 104 (introduced January 14, 1981) identified the bill's purpose in three clauses: "For the purpose of providing for the distribution of excess proceeds from tax sale; requiring an order of court for the payment of the excess; and clarifying language." To that end, the bill proposed to amend the last sentence of then Article 81, § 81(a) (redesignated as § 81(a)(4)), by adding a new subsection (a)(4)(ii) to read: "The collector shall pay [any] excess as ordered by the court in which the foreclosure proceedings were brought."

On February 3, 1981, the Senate adopted a Finance Committee Amendment that struck the second clause of the Title ("requiring an order of court ...") and substituted "authorizing a collector to pay certain funds to a court in disputed cases," which is the precise language that is now codified as TP § 14–818(a)(4).

### 2. Primary Purpose of Surplus Proceeds Provisions

The statutory provisions governing the disposition of surplus proceeds were drafted and intended to provide some relief to former property owners—not financial institutions and other mortgage lenders with defunct liens on the property. This view of the law's purpose is evidenced by documentation that was preserved in the Committee Bill File for Chapter 258 (S.B. 104), Acts of 1981. According to S.B. 104, Tax Sales—Proceeds, the purpose and background of surplus proceeds from tax sales are as follows:

*Purpose of Legislation*

This bill, as amended, clarifies that a county treasurer may pay certain funds resulting from a tax sale to a court in disputed cases.

*Background*

Currently the law provides that when a tax sale produces more funds than are needed to cover the cost of the overdue taxes and the administrative avenges of the sale, that the balance is to be paid "to the person entitled" to the excess funds. However, it is not always clear to a treasurer exactly who is entitled to the balance when a property is owned by several persons, each with claims of partial ownership (especially in the case of heirs).

This bill, as amended, simply clarifies that in disputed cases, a county treasurer may pay the balance from the tax sale to a court pending a court order determining the proper distribution of the balance.

Similarly, the Bill's sponsor, Senator Arthur H. Helton, was recorded explaining the reason for the bill: "Surplus funds are currently distributed to owners of property. In a dispute it is unclear who gets the assets." These comments reflect a legislative intent that the phrase "person entitled to the balance" was intended to refer primarily to the property owner or owners—not to mortgage lien holders or other creditors.

### C. Appellee Complied with TP § 14– 818 and its Internal Procedures

The Court of Appeals has noted that tax sale proceedings have far-reaching implications, "especially in Baltimore City where tax sales are used to address the City's very real problem with abandoned and vacant properties." *Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 382, 893 A.2d 1067 (2006). The Baltimore City Finance Department Tax Sale Balance Procedures, dated March 31, 2008, require specific documents when a request for a purchase surplus is made through a third party. These procedures require that a third party filing a claim submit the following: (1) an "original written request" properly executed by an authorized officer of

the third party; (2) a signed and notarized Power of Attorney to the third party from the person on whose behalf the request is being made; (3) an Affidavit of Verification in favor of the City; and (4) a driver's license or other suitable identification of the person on whose behalf the request is being made. Indeed, the burden of producing the requisite documentation rests on the individual filing the claim.

In the instant case, Asset Recovery's request on behalf of Coleman satisfied the City's requirements. First, Asset Recovery provided a written request for payment of the surplus proceeds. Moreover, Coleman provided a Limited Power of Attorney, authorizing Asset Recovery to act on his and Opportunity Plus' behalf regarding all matters related to the tax and bid balance process. Asset Recovery further submitted an Affidavit of Verification that was identical to the language in the City's Tax Sale Balance Procedures. Lastly, Asset Recovery Vice President, Mitchell Needle, submitted his Maryland driver's license with the claim. Having no other competing claims, the City issued a check to Asset Recovery in the amount of $72,112.80. Critically, by adopting procedures and protocols to ensure compliance with TP § 14–818(a)(4), appellee acted reasonably and sufficiently in determining "the person entitled" to the surplus proceeds pursuant to TP § 14–818(a)(4).[4]

Appellant further contends that Asset Recovery's submissions are "glaring[ly] deficien[t]" by reason of "an apparent impermissible delegation of responsibility." Specifically, appellant argues that the "Tax Sale Supervisor" who processed the claim was not, as appellant maintains by the City's Tax Sale Balance Procedures, the City Solicitor or an Assistant City Solicitor. The City's procedures, however, do not require that each submission be reviewed and approved by the City Solicitor or, for that matter, a delegated Assistant City Solicitor. Rather, the provision in question states that "[t]he City

---

4. Although not relevant to this Court's analysis, there are other avenues for appellant to pursue her claim for the allegedly wrongful payment of surplus funds that resulted from the tax sale foreclosure.

Solicitor [or Assistant City Solicitor] must approve the form
and sufficiency of the Power of Attorney and an Affidavit of
Verification." Indeed, the record demonstrates that the forms
used by Asset Recovery in this case were pre-approved by
Assistant City Solicitor, Kyriakos P. Marudas, on March 31,
2008.

Moreover, appellant alleges that appellee failed to "assess
the priorities" between the property owner and various lien
holders. Critically, no such requirement is imposed by TP
§ 14–818(a)(4) or contained in legislative history of the statute.
Even if there was more than one person or entity timely
claiming that they are "entitled to the balance," the statute
explicitly provides that appellee must submit the "dispute" to
the circuit court for determination, not "assess the priorities."

Additionally, appellant objects to the Finance Director's
acceptance of Coleman as an authorized representative of
Opportunity Plus. Clearly, the Finance Director did not have
any reason to suspect that Coleman was not an authorized
representative of Opportunity Plus. To the contrary, appellee
had every reason to assume otherwise based on: (1) Opportu-
nity Plus's Certificate of Limited Partnership, naming Cole-
man as the General Partner; (2) the Allstate Mortgage on the
Property, which also named Coleman as Opportunity Plus'
General Partner; and (3) Coleman's assurances to Asset Re-
covery and the City that he was, in fact, authorized to act on
behalf of Opportunity Plus. Lastly, the Finance Director had
no reason to doubt the validity of Coleman's claim based on
the documentation that was submitted by Asset Recovery.
When the claim was filed, no other claims were pending, which
necessarily implied that there was no extant "dispute" of
which the Finance Director was aware of or had reason to
suspect.

Lastly, appellant maintains that appellee should have per-
formed an investigation into other potential claims. Indeed,
appellant's contention would create an undue burden on appel-
lee that does not appear required or contemplated by TP
§ 14–818(a)(4). Instead, as evidenced by the City's practice,

**406**

the City relies upon the documentation and sworn statements that accompany the filed claims. Once it determines that a claim complies with the City's procedures, as well as TP § 14–818(a)(4), and there being no competing claims, the City processes payment to the claimant. Based on the record before us, the City, in responding to Asset Recovery's claim for surplus proceeds, fully complied with TP § 14–818(a)(4). As such, the circuit court did not err in denying appellant's petition for proper payment of surplus proceeds and statement of claim.

For the reasons set forth above, we affirm the judgment of the Circuit Court for Baltimore City.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**